December 6, 2013

Mr. Walter Buckingham
16 Elk Street
Rochester, NY 14615

Roach, Brown, McCarthy & Gruber, P.C.
Mark R. Affronti
1920 Liberty Building
Buffalo, NY 14202-3619

**RE: Case Buckingham vs. Lewis General Tires, Inc.**
**Case number: 13 CV -06264L**

To Mark R. Affronti:

I have provided 67 pages of documents for the mandatory disclosure which is required by Rule
26(a)(1) of the Federal Rules of Civil Procedure.

Sincerely,

Walter Buckingham

Water Buckingham

Enclosure: 67 pages

CC:
Judge Marian W. Payson

Walter Buckingham
16 Elk Street
Rochester NY 14615
Federal charge # 16BB203497
EEOC charge # 166-2012-03497
Case # 10155732

December 20, 2012

I have enclosed 35 pages of
supporting documents for review and
and further investigation.

Walter Buckingham

Walter Buckingham

Sworn on the 20th day of Dec 2012

VENIAMIN POLYUKHOVICH
Notary Public, State of New York
No. 01PO6186106
Qualified in Monroe County
Commission Expires July 14, 2016

6/6/12

Division of Human Rights
One Monroe Square
259 Monroe Ave, Suite 308
Rochester, NY. 14607


To whom it may concern:

I (Walter Buckingham) was hired to be an employee for Lewis General Tires, Inc. on June 2010. My job title was (general service); I worked in retail, service and worked in the shop.   Lewis General Tires, Inc. hired staff consisted of ten employees, which included me. I was the only African American employee.  On February 23, 2012 all employees except those who worked retail, received a letter from the company, regarding decreasing work hours.  Lewis General Tires, Inc. decision to decrease hours was to avoid layoffs.

It was communicated to the employees that received the letter from the company, that the decrease in work hours would be temporary.  However, the outcome was that I (Walter Buckingham), who worked in every aspect in the company, including retail, have been treated unfairly.  This is due to me being the only African American employee who has experience in retail; still received a letter to cut my work hours.

I am presenting to you the employees temporary work schedule and an explanation, listed below for the shop area.  This is a part of my complaint of discrimination.

Richie Ralston- Off Mondays
Ken Burley- off Tuesdays
Chris Bergevin- off Wednesdays
Chuck Troche- off Thursdays
Walter Buckingham- off Tuesdays
Greg Shaver- Off Fridays
Matt Hill- To be sent home early at the discretion of Bob and Wayne


Also, employees in retail, their hours remained full time status.  As stated before, my job title was (general service); I worked in retail, service and worked in the shop.  Due to the high volume of business and short of staff, I was asked to work in various areas in the business, such as retail.  Out of all the employees working in retail, shop and service, I was the only one working less than 36 hours per week.

On 4/18/12, I had a meeting with Richard Lewis, Manny D'Ambrosio and Craig Lewis. This meeting was in regards to a change in my work days; I was asked to work on Saturdays in shop and retail, starting June 2, 2012.

On May 16, 2012 I arrived to work at 8 am, when the supervisor Bob Brabant called me into Manny D'Ambrosio office. Manny is the Treasurer/Controller officer for Lewis General Tires, Inc. I entered Mr. D'Ambrosio office, who stated I was laid off due to lack of business in the company; service, retail and the shop.

I asked him why are you laying me off when everyone in service, retail and shop is back to full time status. Mr. D'Ambrosio stated no one is working full time. Then Bob (supervisor) stated the guys are back to full time. However, my hours remained at 32 hours per week. He admitted everyone else in the service, retail and shop was back to full time hours. Although, I have over ten years experience in road service, retail and shop. They didn't utilize my work experience in roadside service even though they were busy. I was laid off from employment at Lewis General Tire, Inc. effect May 16, 2012

I was never given an employee handbook with company policies and procedures. I was never told how many sick days, personal days or vacation time. Yet, all other employees were given two weeks vacation in which, they were able to use as sick time or personal time; but when I called in sick, I wasn't paid. At the time of hire, I was told that I would be given a raise in 30 days, which didn't happen. However, other employees did receive a raise within two years of employment. I worked for two years and never received a performance evaluation, raise or vacation time. I didn't receive or know that I was entitled to vacation until I was laid off and received vacation pay for 44 hours.

When Mr. D'Ambrosio first told me I was laid off on May 16, he didn't give me anything in writing. I told him I was not going anywhere until I receive it in writing; otherwise, it would have been my word against his. So, he gave it to me in writing. I asked for my check and was told I could pick up on May 18, 2012.

On May 18, 2012, I asked for my check from the treasurer/controller officer of Lewis General Tire, Inc., Manny D'Ambrosio. He stated that, we don't normally give checks to employees we terminate. But On May 16, 2012, I was told that I was laid off. But, when I picked up my check on May 18, 2012, I was told that I was terminated.

In conclusion, I was discriminated against because of my race (African American) and the other employees which were Caucasian, was not laid off nor terminated; they kept their jobs.

Sincerely,

_____

Walter Buckingham

NEW YORK STATE DIVISION OF
HUMAN RIGHTS

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

      Complainant

vs.

LEWIS GENERAL TIRES, INC.

      Respondent

RESPONSE AND STATEMENT
OF POSITION

SDHR No. 10155732

ROACH, BROWN, McCARTHY & GRUBER, P.C.
Attorneys for Respondent
LEWIS GENERAL TIRES, INC.
OFFICE POST OFFICE ADDRESS AND TELEPHONE
1920 LIBERTY BUILDING ∎ 424 MAIN STREET
BUFFALO, NEW YORK 14202
TEL: 716 - 852-0400    FAX: 716 - 852-2535

TO:    ALL COUNSEL

PLEASE TAKE NOTICE that an
within action on the       day of
    , 20      , 20    , and duly entered in the office of the Clerk of the County of      of which the within is a copy, was duly granted
      on the

      Yours, etc.,
    ROACH, BROWN, McCARTHY & GRUBER, P.C.
      Attorneys for

DUE AND PERSONAL SERVICE of the within paper(s) and of the Notice hereon endorsed is admitted this   day of
      Attorney(s) for

STATE OF NEW YORK    )
COUNTY OF ERIE  ) SS:
CITY OF BUFFALO )                                  , 20

    day of           , 200___, being duly sworn deposes and says:  that deponent is not a party to this action and is over 18 years of age; that on t
upon,                              , deponent served the within

in this action, at the above address(es) designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in a offi
depository under the exclusive care and custody of the United States post office department within the State of New York

Sworn to before me, this _____day of_____, 20____

      My Comm. Exp._____

Notary Public State of New York, Originally qualified in _____County.

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

WALTER BUCKINGHAM,

                    Complainant,

        v.

                                                    SDHR No. 10155732

LEWIS GENERAL TIRES, INC.,


                    Respondent.

---

Federal Charge No. 16GB203497


The Respondent, **LEWIS GENERAL TIRES, INC.**, above named by ROACH, BROWN, McCARTHY & GRUBER, P.C., their attorneys, responding to the Complaint in the above referenced matter, herein states:

**FIRST:**       Respondent denies that Complainant was subject to unlawful discriminatory actions in the area of employment.

**SECOND:**   Respondent denies that Complainant was discriminated against in any manner by Bob Barant and/or Manny D'Ambrosio, as alleged in the Complaint.

**THIRD:**      Respondent denies that Complainant was discriminated against on May 16, 2012, and further denies that he was discriminated against at any other time or on any other date.

**FOURTH:**    Respondent denies that Complainant was discriminated against in any manner, and more specifically denies that Complainant was discriminated against as a result of his

Race/Color or Ethnicity, as alleged in the Complaint.

**FIFTH:**   Respondent admits that it employs 15 or more employees.

**SIXTH:**   Respondent denies that Complainant's job title was General Service.

**SEVENTH:**   Respondent admits that Complainant is no longer working for the company.

**EIGHTH:**   Respondent admits that Complainant was laid off and further admits that Complainant has not been called back following his lay-off.

**NINTH:**   Respondent denies that Complainant was denied a promotion or pay raise, as alleged in the Complaint.

**TENTH:**   Respondent denies that Complainant was paid a lower salary than other workers with the same job title, as alleged in the Complaint.

**ELEVENTH:**   Respondent admits that Complainant never received a formal performance evaluation during his tenure as an employee.

**TWELFTH:**   Respondent denies any knowledge or information sufficient to form a belief as to any remaining allegations contained in the Charge/Complaint.

## FOR A FURTHER RESPONSE AND AS A STATEMENT OF POSITION, THE RESPONDENT HEREIN STATES:

As and for a Statement of Position, and concerning Complainant's own written statement dated June 6, 2012, which was incorporated into, and included as part of, his Complaint, the Respondent herein states:

Respondent, LEWIS GENERAL TIRES, INC. (hereinafter "Lewis General"), is firmly

Page -2-

committed to maintaining a work environment that is free of discrimination and harassment bas
on a person's race, creed, color, gender, age, sexual orientation, marital status, handicap/disabilit
religion, national origin, military service or arrest/conviction record. To this end, it cannot be sai
that Respondent has subjected Complainant, WALTER BUCKINGHAM (hereinafte
"Complainant"), nor any other individual under its employ, to any unlawful discriminatory practices.

It is Lewis General's position that throughout Complainant's employment as a commercial
tire technician, from July 2010 through May 2012, he was at all times treated appropriately and
fairly. Complainant's lay off was in no way related to his Race/Color or Ethnicity as is alleged in
the Complaint. Rather, Complainant's lay-off, being an at-will employee of Lewis General, was
based entirely on the downturn of business in the national and local economy as discussed more fully
below. In that regard, nearly every position taken by the Complainant in his Complaint and written
statement is false.

## COMPLAINANT'S ALLEGATIONS OF DISCRIMINATION

The Complainant was laid off on May 16, 2012. This lay-off was entirely due and owing to
the economic climate within which Lewis General has found itself. It is no secret that the national
and local economies have been sluggish recently. Lewis General, being a very small, family owned
and operated business, has not been immune to the tough economic environment. Lewis General
has implemented various strategies in an attempt to navigate through the financial turmoil facing the
business without having to cut jobs or lay-off any employee. However, once it became apparent that
lay-offs could not be avoided, the company had no choice but to lay-off its least senior employees.
At no time was any employee's race, color, or ethnicity considered in making departmental lay-offs.

Rather, the roster of employees within a given department was examined and the least tenur
employee would be selected. Of the three Lewis General workers holding the title of commerci
tire technician, the Complainant had the fewest years with the company. This is the sole basis upo
which Complainant's lay-off was based.

Despite his assertion to the contrary, Complainant's position at Lewis General Tire was as
a commercial tire technician. He was never a "general service" worker, and in fact, no employee has
ever held such a title at Lewis General. The company itself is divided into several departments, each
which operate independently from one another. Thus, the successes or failures in one department
have no bearing or consideration on the others. However, taken as a whole, each department
contributes to the overall solvency of the business - albeit in varying percentages.

While an employee, Complainant worked in the Commercial Department. The primary
purpose of that department is tire work for larger trucks and construction equipment. Within the
department, there are two shop managers, a truck mechanic, several on-the-road tire technicians, and
three in-house tire technicians, of which Complainant was one. As an in-house tire technician,
Complainant stayed in the commercial shop and primarily changed tires on commercial trucks that
were physically present on the shop premises.

Although Complainant alleges that he was also a worker in the Retail Department, this was
simply not the case. His allegations in this regard are entirely untrue. In the beginning of his
employment at Lewis General, there were three or four separate occasions when Complainant was
asked to "fill in" for someone in the Retail Department. We would estimate that the amount of time
Complainant spent filling in for others was approximately 15 hours total over the approximate 2
years of his employment. The Retail Department specializes in providing tire care/service for

individually owned passenger cars, many of which are high end luxury cars. As mentioned abov
early on in Complainant's employment, we experimented with asking him to help out with som
Retail jobs. This experiment did not go well as Complainant was unable to complete the tasks i
a timely and skillful fashion and lacked experience with the technology used in changing passenge
tires, which differs significantly from that of commercial vehicles. Beyond the few hours spent
filling in, Complainant was never considered an employee in the Retail Department. Once we
observed Complainant's lack of proficiency to perform the required Retail tasks, he was never asked
to fill in again. It should be noted that the Retail department is comprised of passenger car
mechanics who specialize in passenger vehicles. Complainant is not a qualified ASE certified
mechanic and has no experience with serving as mechanic in any capacity.

Complainant's sole job and responsibility while working at Lewis General was a
commercial tire technician. When first hired in July 2010, Complainant represented to management
during his interview and on his application, that he had prior road-work experience and that he was
able to do both shop and road-work for the commercial department. (A complete copy of
Complainant's employment file, including application, is attached hereto as **Exhibit "A"**). Once
hired, however, Complainant refused to do any road-work whatsoever and insisted on working only
as an in-house commercial tire technician.

Among the employees working as in-house commercial tire technicians, Complainant was
one (1) of three (3). Greg Shaver, who is Caucasian, also works as an in-house commercial tire
technician, as does Chuck Troche, who is of Hispanic descent. Of those three individuals,
Complainant had been with the company for the least amount of time. Complainant was, however,
compensated at a higher rate than Mr. Shaver, despite the fact that Mr. Shaver has been with the

company for more than a decade. Thus, Complainant's allegation that he was paid less than his fellow employees because of his race is simply not true. The highest compensated individual in that group was Mr. Troche, followed the Complainant, who both earned more than Mr. Shaver. Payroll records supporting this fact have been attached as Exhibit "B" hereto. It should also be noted that Complainant was hired at a higher starting wage than any other individual that Lewis General has ever hired as a commercial tire technician.

Although Lewis General does not have an employee handbook, all rules and regulations were explained to the Complainant at the time his employment commenced. Plaintiff was never promised a thirty-day raise, nor was he promised a raise at any other time during his employment. Complainant was never denied a pay raise nor a promotion as there were no such opportunities available, thus, his allegations in this regard are baseless. As to the claim that Complainant never received a formal performance evaluation while an employee at Lewis General, this is entirely true. However, it holds true for every single employee at Lewis General, regardless of department and/or position. As a small family-owned company, Lewis General may operate less formally than what Complainant was accustomed to prior to 2010. Instead, it is our policy and practice that feedback be provided on a daily basis and in an informal manner. We believe that formal performance evaluations are needless in an environment where communication is open, easy, and where upper management and the owner is on site, each and every day, and intimately involved in the day-to-day operations.

## LAY-OFF OF MAY 16, 2012

As stated above, Complainant was indeed laid off on May 16, 2012. Prior to that time, and

beginning sometime in January 2012, we reduced the number of hours that shop employees wou
be allowed to work. As Complainant references in his complaint, a formal memorandum settin
forth a revised work schedule was created and distributed to all employees in the commercia
department in February 2012. A copy of this memorandum, which was included as part o
Complainant's complaint is also annexed hereto as Exhibit "C". Our intention in implementing
these cutbacks was to avoid laying off any single employee as a result of a significant downturn in
business.

As can be seen from Exhibit "C", entitled "Temporary Work Schedule", all commercial
department employees were given a reduction in hours. All three commercial tire technicians were
given the exact same reduction in hours, Complainant included. His hours were not cut any more
or less than the other in-house tire technicians. Any variation in hours beyond this schedule was at
the Complainant's request.

To that point, I note that Complainant references a meeting that occurred in April 2012
concerning a "change in his work days". He does not; however, provide any further detail nor does
he attempt to relate this meeting to any allegation of discrimination. The purpose and result of this
meeting puts this matter in context and should therefore be discussed. As an initial matter, it should
be noted that prior to the cut-backs in early 2012, Complainant has always worked on Saturdays
All technicians in the commercial department work Saturdays, with every third Saturday o
rotating schedule. On April 12, 2012, Complainant failed to report for work and f
advise anyone at Lewis General that he would not be coming in that day.
reprimanded and given a written warning for same, which can be fou
attached as Exhibit "A". Thereafter, Complainant advised that he was dealn

and requested a meeting to discuss his work schedule. Management at Lewis General was happy oblige. It was at this time that Complainant informed us that his mother had been very ill and th: he needed to take care of her on Saturdays. He requested that he not be required to work Saturday so as to provide this necessary care. We completely understood and respected Mr. Buckingham's request, because family is important to us. We inquired as to how much time Complainant needed off of work on Saturdays and reached an agreement on a revised schedule. A copy of our agreement with the Complainant resulting from this April 2012 meeting is part of Exhibit "A". At his request, Mr. Buckingham was the only technician not required to work on Saturdays.

The initial modified work schedule for all commercial employees, set forth in Exhibit "C", was intended to be temporary. Unfortunately, despite the cut-back in hours, the financial state of the company did not improve. Business did not recover as we had hoped and after a few months of treading water, it became necessary for us to let someone go. It has always been our policy that when lay-offs are required, the person who has the least seniority is selected. To us, this is the only fair and equitable way to do it. As mentioned previously, of the commercial tire technicians, Complainant was, by far, the least tenured. Both Mr. Shaver and Mr. Troche have been with the company for more than a decade. Complainant was hired in 2010. It was on this basis that Complainant was laid off.

While Complainant opines that our business was booming at the time of his lay-off, such was simply not the case, and any representation to the contrary is entirely disingenuous. In fact, the only area within the commercial department which had recovered somewhat from the downturn was road-service. The road service workers, all of whom have been with the company longer than Complainant, were back to working near full-time by May 2012. However, the in-house technicians,

including Mr. Buckingham, were not. This was explained to the Complainant during a conversation of May 16, 2012. He was advised that his lay-off was due simply to a lack of work and the company needing to stay financially viable. We told him that unfortunately he was the newest employee hired and therefore would be the first to be laid off. He requested written notice of his lay-off and we were happy to accommodate his request. We presumed it was for unemployment benefit validation which we felt was fair.

Following his lay-off, when Complainant returned to the shop to pick us his paycheck, he was paid for all unused service and vacation time. All employees who are laid-off are given this benefit as a matter of policy. Complainant was paid in accordance with this policy. At no time was Complainant advised that he had been terminated with cause. If the term terminated was used when picking up his final check, it used to describe the fact that he was no longer an active employee of Lewis General not that he had been fired for cause. We believe that this was adequately explained to Complainant.

At no time during his tenure with Lewis General was the Complainant discriminated against in any fashion. We treated Mr. Buckingham with fairness and respect. Neither Complainant's race nor his ethnicity were ever considered as part of our decision making process in trying to navigate through tough economic times. Mr. Buckingham was treated well at all times and paid well. His allegations of discrimination against Lewis General are unfounded, and frankly, rather surprising. There is no support for Complainant's contention that he was treated differently because of his race. As discussed above, the decision to lay Mr. Buckingham off was strictly a financial one. He was the employee with the least amount of service time with the company, and as a result, we had no choice but to reduce our costs by laying him off. Complainant was never subjected to any unlawful

discriminatory actions while employed by Lewis General and his lay-off was in no way related to his race/ethnicity. Accordingly, Lewis General, respondent herein, requests that the Division dismiss Complainant's complaint in its entirety and with prejudice.

Dated: July 20, 2012

ROACH, BROWN, McCARTHY & GRUBER, P.C.

By _____

Mark R. Affronti, Esq.

*Attorneys for Respondent*
LEWIS GENERAL TIRES, INC.
1920 Liberty Building
Buffalo, New York  14202
Telephone No.:  (716) 852-0400
maffronti@roachbrown.com

TO:   **NEW YORK STATE**
      **DIVISION OF HUMAN RIGHTS**
      One Monroe Square
      295 Monroe Avenue, Suite 308
      Rochester, New York 14607

# Lewis General Tires Inc - 11056
## Employee Dates

**Location: 100 Department: 8**

| Employee Name | Emp No. | Birth Date | Hire Date | Term Date | Rehire Date | Last Raise |
|---|---|---|---|---|---|---|
| Allen Jr., William H (T) | 000606 | 09/27/1959 | 12/01/2004 | 10/05/2007 | | |
| Bergren, Christopher J | 000810 | 03/02/1987 | 09/11/2005 | 05/28/2010 | 10/04/2005 | |
| Bobb, Shane T (T) | 000816 | | | 05/28/2010 | 10/03/2006 | |
| Buckingham, Walter R (T) | 000038 | 05/03/1979 | 09/11/2006 | 10/02/2006 | 11/15/2017 | |
| Bukowicz, Steven M (T) | 000774 | 10/15/1982 | 07/06/2010 | 05/16/2012 | 09/14/2006 | |
| Burley, Kenneth A | 000793 | 03/21/1970 | 04/08/2002 | | | |
| Cuozzo, Michael A (T) | 000821 | 03/02/1971 | 07/27/2004 | 03/03/2011 | 07/24/2006 | |
| Gardner, Harold R (T) | 000836 | 01/08/1961 | 07/27/2004 | | 07/22/2006 | 07/24/2006 |
| Greene, Richard F | 000748 | 05/16/1942 | 10/02/2007 | 12/31/2009 | | 05/08/2008 |
| Morrik Jr., Donald L (T) | 000842 | 09/09/1991 | 09/09/1991 | 03/03/2011 | | 11/28/2007 |
| Pattison Jr., Richard C | | 10/26/1950 | 08/20/1999 | | | 09/06/1991 |
| Shewfl, Greg L | 000629 | 10/04/2010 | 11/02/2010 | | 08/31/2005 | |
| Sparry, Shawn M. | 000759 | 02/10/1969 | 09/19/1991 | | | |
| Sletterbagen, Alfred L | 000739 | 04/11/1967 | 11/05/2010 | | 05/14/2008 | |
| Summerson, Jacob J (T) | 000650 | 07/29/1976 | 09/25/2000 | | 10/31/2007 | |
| Thousand Jr., Josh (T) | 000788 | 02/02/1954 | 07/20/2011 | | 05/31/2006 | |
| Torres, Herberto (T) | 000843 | 05/06/1961 | 10/11/2004 | 05/23/2006 | | 02/01/2006 |
| Trecho, Charles | 000809 | 12/19/1969 | 11/04/2010 | 12/21/2010 | | 02/01/2006 |
| Tumia, Paul E | 000824 | 10/18/1986 | 09/03/2005 | 01/03/2006 | | 08/02/2005 |
| | 000825 | 03/07/1953 | 12/18/2007 | | | 06/19/2008 |
| | | 09/20/1956 | 02/27/2008 | | | 03/05/2008 |

Ovation

NEW YORK STATE
DIVISION OF HUMAN RIGHTS
ONE MONROE SQUARE
259 MONROE AVENUE, SUITE 308
ROCHESTER, N.Y.  14607

To: New York State Division of Human Rights

Enclosed is written response (known as a rebuttal).  Re:
Walter Buckingham v. Lewis General Tire, Inc.
Case No. 10155732.

In reference to the response from Respondent: Lewis General Tires, Inc. a
their attorneys Roach, Brown, McCarthy & Gruber, P.C.

Page 1 of Respondent documentation

First through the Fourth responses from the respondent:  I know that I wa
discriminated against, in spite of the respondent's denial.  This will be expla
in more detail later in my replies of this complaint documentation.

Page 2 of Respondent documentation

Sixth response:  My position that I applied for was Tire Service Technician, in
which entailed road service work.  I also did other various job duties within the
company such as retail shop, tire deliveries, company order filling, warehouse
department, assisted in unloading tire shipment of stock off truck. I considered
myself as a General Service employee.

Ninth response: I didn't get a pay raise in the 22 months that I worked for Lewis
General Tires, Inc.

Tenth response: I did not state that the other employees within the company,
salaries were higher than mine. This is what I stated: I asked him why you are

laying me off when everyone in service, retail and shop is back to full status. Mr. D'Ambrosio stated no one is working full time. Then Bob (supervisor) stated the guys are back to full time. However, my hours at 32 hours per week. He admitted everyone else in the service, retail was back to full time hours. I had over ten years experience in road ser retail and shop. However, they didn't utilize my work experience in roa service even though they were busy. I was laid off from employment at General Tires, Inc. effective, May 16, 2012.

**Twelfth response:** This response from the respondent is unclear on what are implying. Therefore, I'm not able to reply to this response unless give more clarification.

## Page 3, paragraph # 3- lines 6 & 7-of Respondent documentation- Complainant Allegations of Discrimination

In reference to Lewis General Tires, Inc., laying off its least senior employe A Caucasian male employee was terminated, due to having an odor of drug one of Lewis General Tires, Inc. service trucks. However, this employee was rehired within a month time. Also, he was never given a drug test. In additic another Caucasian employee who worked in Retail and changing tires, resign but did not return to work for the company. In other words, the company dic not lay off any other employees, except me.

## Page 4, paragraph # 4-of Respondent documentation

You have list some occasions when I, complainant, was asked to fill in for someone in the Retail Department. I did work in the Retail Department as per page 4, paragraph # 4; lines 4 & 5. See also page 5, paragraph # 1.

When I stated that I worked in Retail that was true and if you read on page 4, paragraph # 4, you will see that it was true that I worked in the Retail department for some time. In addition, I did work more than 15 hours in Retail



within the time of my employment at Lewis General Tires, Inc. To give better explanation to support my defense, the company was short han to tire techs resigning in Retail department. This resulted in the compa asking other employees in the Shop department, such as tire techs (Cra Shaver & Chuck Troche) to work in Retail department. However, (Craig & Chuck Troche) refused to work in Retail. So, I was asked to cover in th department on various occasions. Whenever the Retail department nee me, I was always available. I did work more than 15 hours in the Retail department within the time of employment at Lewis General Tires, Inc I also did deliveries and picked up customer orders on behalf of the Reta Department on many occasions.

## Page 5 paragraph #1 of Respondent documentation

When Lewis General Tire, Inc. first hired me, I was changing tires on passe luxury and commercial vehicles. There are two tire machines in the comm department, one for the commercial vehicles, the other for the passenger luxury vehicles. I used both tire machines, one to dismount and mount tires steel rims up to 16 inches. The other tire machine was used to dismount an mount tires on aluminum, chrome and alloy wheels up to 23 inches. In addit the company did replace the passenger and luxury tire machine, with a new reconditioned one, since I've been working there.

I have over ten years experience and skills in changing passenger, luxury and commercial vehicle tires.

I was more than competent, to complete the tasks of changing tires on passenger and luxury vehicles, in a timely and skilful fashion. I would not have applied for a position as a Tire Service Technician at Lewis General Tire Inc. if I had lacked tire changing skills in any capacity.

See attached copy of tire changing procedures for passenger and high end luxury vehicles from the internet.

Job description for a Tire Service Technician:

3

Install and repair tires for passenger and commercial vehicles and tru
road vehicles; such as heavy equipment and tractors, buses, semi trac
trucks, semi trailers, flat bed trucks, cargo van; etc.

Changing a commercial vehicle is heavier and more dangerous than a
passenger car vehicle. So, if that was a problem then why was I asked
every Saturday, as of June 2, 2012. I was told that I would be working
Retail department.

I listed the different jobs in areas I worked in to show that I had experier
these areas within the company. You don't have to be an ASE certified
mechanic to change tires. This one of the reasons I stated for filing
discrimination, because I was willing, ready and able to work, in any area
company. Also, on the road but I was refused. I was only allowed to do m
work outside of the building in their lot. When they said that there was no
work, I was not offered to go to work on the road. How can I refuse a job t
was not offered to me. I have experience in road service work.

## Page 5, paragraph # 2 of Respondent documentation

I did not refuse a job when asked. I even delivered tires for Lewis General Ti
Also, I unloaded tires from trailers that were being received for stock in the
warehouse and filled order requests, repaired tires, worked in retail
department, loaded the scrap trailer and stacked tires in recap department to
be recapped. This is to let you know that I worked where ever I was asked to.

## Page 6, paragraph #1 & #2 of Respondent documentation

For the time I worked for the company I did not get a raise.

## Page 7, paragraph # 3, line#7 of Respondent documentation

I was at work on 4/12/2012. As per exhibit "A" dated 4/12/2012.

## Page 8, paragraph 2 of Respondent documentation

I was not the least seniority working for Lewis General Tire, Inc. Someo hired after I was hired. Also, someone was rehired after I was hired.

I was informed that 3 Caucasian employees was hired since I have been

## Reply to employee warning notice from the respondent:

The only time that I was written up is when the company pursued to discriminate against me. I received a written notice dated 4/13/2012 for show to work on 3/31/12, by supervisor (Bob Brabant), in which I disagre This noticed was received two weeks later after the initial incident date 3/31/12. I did speak to supervisor (Bob Brabant) on 3/28/12, in regards to being excused from work, in order to care for my mother who has medical issues. I did indicate that I was not able to work in Retail on 3/31/12. Bob Brabant did give me the approval to have 3/31/12 off from work. I did take day off based on Bob's approval. However, in spite of the approval from th supervisor (Bob Brabant), he did ignore my request to have that day off (3/31/12); this is based on the (Employee Warning Notice), which was dated 4/12/12. I never received any vacation, sick or personal time off, during my time working for Lewis General Tires, Inc. Their main focus was to find a way terminate me from employment. This is because of my color and my race.

## Exhibit A-Memo dated April 26, 2012

## Reply to memo from the respondent:

My reply to the respondent is that on April 18, 2012 the letter states that I will be excused from work on Saturdays until June 2, 2012. However, this memo dated April 26, 2012, went out indicating that I didn't show up for work on Apri 21, 2012 and that I didn't call. But, how can I have a no show and no call when I was not suppose to work Saturdays until June 2, 2012, in which this was discussed and agreed upon, in a meeting with the owners of the company on April 18, 2012.



## Exhibit A-Memo dated April 30, 2012

In replying to the respondent complaint of me arriving to work on Apri
at 7 am, instead of 8am:

On April 30, 2012, my timecard was approved by service manager (Crai
to work from 7 am- 5 pm; due to the fact that my other job duties were
orders (mounting recaps for customers), for those employees that work
sales.  These orders had to be out before 12 noon.

## Conclusion

When I first started working for Lewis General Tires, Inc., I let them know
have skills in Road Service.  In addition, I never refused a job, whether bein
asked to work in the Retail; Warehouse; Road Service; Tire Deliveries; Fillin
orders for Sales personnel; Fulfilling requests for Customer Tire casings to I
recapped and I stacked in the Recap department; Loaded the scrap trailer v
scrap tires; Stored away customers painted wheels and rims in the sales
personnel row; Tire changing on the passenger and luxury vehicles and
commercial vehicles.

When Lewis General Tire, Inc. first hired me; I was changing tires on passeng
luxury and commercial vehicles.  There were two tire machines in the
commercial department; one for the trucks and the other for the passenger a
luxury vehicles. I not only had the skills to change passenger and luxury vehicl
tires. In addition, I have skills to change forklift, off road, two type, turf, wheel
barrel, semi trucks, trailer, tractors off road tires and more.

In the Retail department, there was a need of a Tire Service Technician.  The
need was due to Retail technicians only working for regular pay and
commission. The Retail Technicians would only take the jobs in which, they
were paid more in commission. As a result, this forced the company to hire a
Tire Service Technician.  Due to these facts stated, there would always be a Tire
Technician in the Retail department.  That explains why there was a high

(1)

volume of passenger and luxury vehicles coming into the Commercial Department. All the Commercial Technicians have worked on passenger luxury vehicles in the Commercial Department, which includes me.

I have strong troubleshooting, listening and critical thinking skills. Also, solid technical understanding of tire repair and have strong communicat skills.

When I worked for the company, I had the ability to handle multiple responsibilities. I communicated ideas to others such as, suggesting to ot employees to air up tires in safety tire cages. I worked as a team player ar never complained. I was willing to accept any positions with growth and potential within the company. However, Lewis General Tire Inc.; did not gi the opportunity to advance and utilize my skills in Road Service on May 16 2012; regardless of them being busy. They indicated that there was no wor me on that particular date, which was a contradiction of what was stated. Furthmore, they did have an extra service truck that was not being used at time.  I did also respond positively to demanding situations, such as working the Retail Department without complaining.

I do consider myself having perfect attendance; in spite of not receiving vacation, personal and sick time off.

I asked that you do not dismiss my complaint. As you can see, some of what I stated in the petition was verified by Lewis General Tires, Inc., in their respons I was discriminated against.

Sincerely, Walter Buckingham

Walter Buckingham

Sworn to me 8|3|12

Maureen Meadee

MAUREEN MacADAM
Notary Public, State of New York
Qualified in Monroe C

7

at Lewis General Tire Inc. that I mr. Buckingham used for passenger cars, high end luxury cars and more.





## MEMO

 

DATE Nov 7. 2011

MONDAY

WAYNE
BOB Brabant

I NEED two meN to
WORK IN RetAiL THIS
SATUrDAY: WHICH IS ALREADY
booKED.
From 7:30 A. m. UNtiL
12:00

THIS WouLD be

1. MATT

2. WALter

cc: CrAiG
CHRIS HUSSONG

Dick Lewis

# LEWIS GENERAL TIRES, INC.

3870 WEST HENRIETTA RD., ROCHESTER, N.Y. 14623
(585) 334-0900   REG. REPAIR SHOP # R5280454

7-29-2011

Dick Lersch
Louie

SATURDAY
WALTER CAN Work IN Retail
Louie Could Work IN THE SHop

Dick Lersch, Could you
Work THIS SATURDAY

Dick Lewis

9

$000.45⁰

02 1P 0004187368 NOV 07 2012
MAILED FROM ZIP CODE 14607

Walter Buckingham
16 Elk St.
Rochester, NY 14615

146|54|206 :C015

STATE OF NEW YORK,
EXECUTIVE DEPARTMENT
DIVISION OF HUMAN RIGHTS
ROCHESTER REGIONAL OFFICE
One Monroe Square
259 Monroe Avenue, Room 308
Rochester, NY 14607



NEW YORK STATE
# DIVISION OF HUMAN RIGHTS
ONE MONROE SQUARE.
259 MONROE AVENUE, SUITE 308
ROCHESTER, NEW YORK 14607

(585) 238-8250
Fax: (585) 238-8259
www.dhr.ny.gov

ANDREW M. CUOMO
GOVERNOR

GALEN D. KIRKLAND
COMMISSIONER

November 7, 2012

Walter Buckingham
16 Elk St.
Rochester, NY 14615

> Re:   Walter Buckingham v. Lewis General Tire, Inc.
>         Case No. 10155732

Dear Walter Buckingham:

Please be advised as of the time of this writing November 7, 2012, at 9:30 AM, I do not know if the EEOC has received your rebuttal statement.

I have reviewed it. At the time of our interaction please provide the following information:

The name of the Caucasian male you allege was terminated from employment and subsequently rehired.

The name of the Caucasian individual you allege resigned employment.

The names of the individuals you allege were hired after you were hired or were rehired after you were hired.

The source of your allegation that three Caucasians were hired after you were laid off. It is my intention to contact that individual.

Thank you for your cooperation.

Very truly yours,

Walter Buckingham

John A. Gee, III
Human Rights Specialist I

$ 000.45⁰
PITNEY BOWES
02 1P
0004167366  OCT 31 2012
MAILED FROM ZIP CODE 14607
UNITED STATES POSTAGE

STATE OF NEW YORK
EXECUTIVE DEPARTMENT
ISION OF HUMAN RIGHTS
OCHESTER REGIONAL OFFICE
One Monroe Square
259 Monroe Avenue, Room 308
Rochester, NY 14607

Walter Buckingham
16 Elk St.
Rochester, NY 14615

On this date a respondent only conference was convened by phone at the Rochester office of the New York State Division of Human Rights. Present were Mr. Craig Lewis, owner of respondent; Mr. Manny D'Ambrosio, CFO for respondent; Mr. Bob Barant, complainant's supervisor; Mr. Mark Affronti, Esq. representing respondent; and this reporter.

Mr. Lewis said respondent has been in business for 90 years. He said the business is closely held and employs 35 individuals. Mr. Lewis said 80% of the respondent's business involves commercial accounts of all kinds. He said the respondent has a one person road service employee and four salespeople on the commercial side. In response to my inquiry, the witness said retail is not connected with the passenger side of the business.

In response to my inquiry, Mr. Lewis said he hired complainant who had worked for a competing business. He said complainant asked not to have to perform road work. He said complainant was assigned to do inside work and that complainant caught on quickly.

In response to my inquiry, Mr. Lewis said the ASE certification system is a manner by which mechanics are rated. He said ratings range from apprentice to master. He said not all establishments offer or even care if an employee has an ASE certification. He said respondent does participate in the program. In response to my inquiry, he said a competent mechanic may not necessarily have an ASE certification.

I asked about the distinction between servicing commercial vehicles as opposed to passenger vehicles. The witness said commercial vehicles are not placed on a lift at the store. He said they are lifted by a bottle jack or a hand jack at the site of the service. He said physical strength is required for servicing commercial vehicles as hand tools and pry bars are for example used for changing a tire while a machine assists and individual changing a tire on a passenger vehicle.

Mr. Lewis said the deterioration of the national economy hit the respondent in late 2011. He said the commercial side of the business was hit hard. He said most of respondent's commercial customers are school districts, construction companies and townships. He said talk of layoffs began in January, 2012. He said the decision was jointly made by him, Bob Barant and Manny D'Ambrosio. He said the decision was based on the theory of "last hired, first fired".

I asked respondent about it's "no call no show" policy. Mr. Lewis said the first instance would result in a written warning; the second a suspension.

No one had anything further. We adjourned.



NEW YORK STATE
**DIVISION OF HUMAN RIGHTS**
ONE MONROE SQUARE
259 MONROE AVENUE, SUITE 308
ROCHESTER, NEW YORK 14607

(585) 238-8250
Fax: (585) 238-8259
www.dhr.ny.gov

**ANDREW M. CUOMO**
GOVERNOR

**GALEN D. KIRKLAND**
COMMISSIONER

October 31, 2012

Walter Buckingham
16 Elk St.
Rochester, NY 14615

Re:   Walter Buckingham v. Lewis General Tire, Inc.
Case No. 10155732

Dear Walter Buckingham:

Please be advised I have been assigned this matter as investigator. Enclosed please find the summary of my conversation with respondent personnel. You are invited to comment thereon. You may comment in writing or by calling me at 585-238-8257 to arrange a phone interaction. May I please interact with you before November 19th?

Please be advised, if you wish you may e-mail me at jgee@dhr.ny.gov.

Thank you.

Very truly yours,

John A. Gee, III
Human Rights Specialist I



Federal Charge # 16GB203497
EEOC Charge # 16G-2012-03497

December 19, 2012

U.S. Employment Equal Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

To whom it may concern:

I am writing to request a review and an investigation by your office on my complaint against Lewis General Tire, Inc. Furthermore, after seeking assistance from the New York State Division of Human Rights, I am disputing their outcome determination that there was (No Probable Cause), in my complaint against Lewis General Tire, Inc.

To explain more in detail concerning my dispute against the determination from New York State Division of Human Rights is as follows. I submitted the necessary documents concerning my complaint to the New York State Division of Human Rights. On July 20, 2012, the New York State Division of Human Rights received a (Response and Statement of Position) from Lewis General Tire, Inc. attorney's Roach, Brown, McCarthy & Gruber, P. C.

I later received by mail a response back from the New York State Division of Human Rights regarding Lewis General Tire Inc. attorney's (Response and Statement of Position). On August 3, 2012, I sent out a rebuttal back to the New York State Department of Human Rights, concerning the attorney's (Response and Statement of Position).

On October 31, 2012, I received a letter response from an employee John A. Gee III, job title Specialist I, at the New York State Division Human Rights. This letter from the Specialist indicated that he is the assigned investigator to my case and indicated what action that was taken. Furthermore, I'm disputing the Specialist handling of my case.

There was an enclosed statement in the received letter by Specialist John A. Gee III from October 31, 2012.  On November 6, 2012, I contacted the Specialist concerning his letter from the above stated date.  He indicated to me during my phone conversation with him that he had a phone conference with Lewis General Tire, Inc., personnel. I'm indicating that this was an inappropriate action taken by such Specialist, due to not reading Lewis General Tire, Inc. attorney's (Respondent Statement of Position) and reviewing my rebuttal against the (Respondent Statement of Position), prior to the phone conference with the company's personnel.

Last, I would like to know if there would be a conflict of interest when someone who is supposed to work on your behalf, is related to another person working for a department that you are filing a complaint against.

I have enclosed some supporting documents, regarding stated complaint above, for review and further investigation. If more information is needed, you may contact me by mail at 16 Elk Street, Rochester, New York 14615 or phone (585) 230-6120.

Sincerely,  *Walter Buckingham*

Walter Buckingham

sworn on the 90th day Dec 2012

*Veniamin Polyukhovich*

VENIAMIN POLYUKHOVICH
Notary Public, State of New York
No. 01PO6186108
Qualified in Monroe County
Commission Expires July 14, 2016



EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Walter Buckingham<br>16 Elk Street<br>Rochester, NY 14615 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2012-03497 | Holly M. Woodyard,<br>Investigator | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_Kevin J. Berry,_ (signature)

**Kevin J. Berry,**
**District Director**

March 15, 2013
(Date Mailed)

Enclosures(s)

cc:
**LEWIS GENERAL TIRE, INC.**
**Attn: Director of Human Resources**
**3870 West Henrietta Road**
**Rochester, NY 14623**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ORIGINAL
RECEIVED AND FILED
UNITED STATES DISTRICT COURT CLERK
WESTERN DISTRICT OF NEW YORK

MAY 2 2 2013
BY: _____

Revised 05/01 WDNY

## Walter Buckingham

_____
Name(s) of Plaintiff or Plaintiffs

Jury Trial Demanded: Yes____ No____

-vs-

## Lewis General Tires, Inc.

_____
Name of Defendant or Defendants

**DISCRIMINATION COMPLAINT**
-CV-
_____

**13 CV 6264 L**

This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

**X** Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race, color, gender, religion, national origin).

> **NOTE:** In order to bring suit in federal district court under Title VII, you must first obtain a <u>right to sue letter</u> from the Equal Employment Opportunity Commission.

_____ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).

> **NOTE:** In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first <u>file charges</u> with the Equal Employment Opportunity Commission.

_____ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).

> **NOTE:** In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a <u>right to sue letter</u> from the Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub.L.No. 102-166, and any related claims under New York law.

1.   My address is: __16 Elk Street__
   __Rochester, NY, 14615__

   My telephone number is: __(585) 254-7917__

2.   The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

Name: Lewis General Tires, Inc.
Number of employees:
Address: 3870 West Henrietta Road
Rochester, N.Y. 14623

3.   (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked. (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

Name: _____
Address: _____
_____
_____

4.   I was first employed by the defendant on (date): July 6, 2010

5.   As nearly as possible, the date when the first alleged discriminatory act occurred is: _____
April 13, 2012

6.   As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any did): March 31, 2012; April 13, 2012; May 16, 2012 and May 18, 2012

7.   I believe that the defendant(s)

a. _X_          Are still committing these acts against me.
b. _____        Are not still committing these acts against me.
(Complete this next item only if you checked "b" above)   The last discriminatory act against me occurred on (date) _____

8.   (Complete this section only if you filed a complaint with the New York State Division of Human Rights)

The date when I filed a complaint with the New York State Division of Human Rights is
_____ June 6, 2012 _____
(estimate the date, if necessary)

I filed that complaint in (identify the city and state): Rochester, New York

2

The Complaint Number was: *Case No. 10155732*

9.  The New York State Human Rights Commission did ___X___ /did not _____ issue a decision. (NOTE: If it did issue a decision, you **must** attach one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

10. The date (if necessary, estimate the date as accurately as possible) I filed charges with the Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged discriminatory conduct is: *December 19, 2012*

11. The Equal Employment Opportunity Commission did ___X___ /did not _____ issue a decision. (NOTE: If it did issue a decision, you **must** attach one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

12. The Equal Employment Opportunity Commission issued the attached Notice of Right to Sue letter which I received on: *March 18, 2013* _____. (NOTE: If it did issue a Right to Sue letter, you **must** attach one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

13. I am complaining in this action of the following types of actions by the defendants:

    a. _____ Failure to provide me with reasonable accommodations to the application process

    b. _____ Failure to employ me

    c. ___X___ Termination of my employment

    d. _____ Failure to promote me

    e. _____ Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

    f. _____ Harassment on the basis of my sex

    g. _____ Harassment on the basis of unequal terms and conditions of my employment

    h. _____ Retaliation because I complained about discrimination or harassment directed toward me

    i. _____ Retaliation because I complained about discrimination or harassment directed toward others

    j. _____ Other actions (please describe) *I was discriminated against because of my race and color black (African-American)*

3

14. Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

    a. ☒ Race

    b. ☒ Color

    c. _____ Sex

    d. _____ Religion

    e. _____ National Origin

    f. _____ Sexual Harassment

    g. _____ Age
    _____ Date of birth

    h. _____ Disability
    Are you incorrectly perceived as being disabled by your employer?
    _____ yes _____ no

15. I believe that I was ☒ /was not _____ intentionally discriminated against by the defendant(s).

16. I believe that the defendant(s) is/are ☒ is not/are not _____ still committing these acts against me. (If you answer is that the acts are not still being committed, state when: your _____ and why the defendant(s) stopped committing these acts against _____

17. A copy of the charge to the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of my claim. (NOTE: You must attach a copy of the original complaint you filed with the Equal Employment Opportunity Commission and a copy of the Equal Employment Opportunity Commission affidavit to this complaint; failure to do so will delay initiation of your case.)

18. The Equal Employment Opportunity Commission *(check one)*:
    _____ has not issued a Right to sue letter
    ☒ has issued a Right to sue letter, which I received on March 18, 2013

19. State here as briefly as possible the *facts* of your case. Describe how each defendant is involved, including *dates* and *places*. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. *(Use as much space as you need. Attach extra sheets if necessary.)*

1. On March 29, 2012, I heard people making racial slurs while on my job at Lewis General Tires Inc., located at 3870 West Henrietta Road, Rochester, NY, 14623.

2. On May 16, 2012, I was the only black African-American employee working for Lewis General Tires, Inc. I was told that I was laid off, because they said that they didn't have any work for me to do.

3. On May 18, 2012, the company (Lewis General Tires, Inc.) indicated that I was terminated. It was apparent to me that this company discriminated against me, due to hiring caucasians to fill my job positions.

4. I have more details and information. But, due to the fact that this is a part of my case, I will disclose at a later time.

4

## FOR LITIGANTS ALLEGING <u>AGE DISCRIMINATION</u>

20.    Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct _____ 60 days or more have elapsed _____ less than 60 days have elapsed

## FOR LITIGANTS ALLEGING AN AMERICANS WITH DISABILITIES ACT CLAIM

21.    I first disclosed my disability to my employer (or my employer first became aware of my disability on _____

22.    The date on which I first asked my employer for reasonable accommodation of my disability is _____

23.    The reasonable accommodations for my disability (if any) that my employer provided to me are: _____
_____
_____

24.    The reasonable accommodation provided to me by my employer were _____/were not _____ effective.

**WHEREFORE,** I respectfully request this Court to grant me such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

Dated: 5-21-13

Walter Buckingham
_____
Plaintiff's Signature

**(Attachment)**

## Answer to # 1 from the:
## [Application for Appointment of Counsel Application Form]

My case concerns the following issues (s)
(briefly summarize your case):

1.   On March 29, 2012, I heard people making racial slurs while on my job, at Lewis General Tires Inc.; located at 3870 West Henrietta Road, Rochester, NY 14623.

2.   On May 16, 2012, I was the only black African-American employee working for Lewis General Tires, Inc.   I was told that I was laid off, because they said that they didn't have any work for me to do.

3.   On May 18, 2012, the company (Lewis General Tires, Inc.) indicated that I was terminated.   It was apparent to me that this company discriminated against me, due to hiring Caucasians to fill my job positions.

4. I have more details and information but, due to the fact that this is a part of my case, I will disclose at a later time.

**Roach, Brown,**
**McCarthy & Gruber, P.C.**

**1920 LIBERTY BUILDING**
**424 MAIN STREET**
**BUFFALO, NEW YORK 14202-3619**
**(716) 852-0400**
**FAX (716) 852-2535**

September 13, 2013

Walter Buckingham
16 Elk Street
Rochester, New York 14615

         Re:    Walter Buckingham v. Lewis General Tires, Inc.
               Our File No.: 8-12-160
               Docket No. 1:13-cv-6264L

Dear Mr. Buckingham:

        Thank you for your letter dated September 9, 2013 which I received in my office today. This will confirm that you have agreed with each of the dates proposed in the draft Proposed Scheduling Order which was sent to you. I will advise the Court in the writing that we are in agreement as to a Scheduling Order and will, of course, copy you on that correspondence.

        I appreciate you formalizing a request for resolution in advance of the conference. As I am obligated to do, I will convey this information to my client.

                      Very truly yours,

               ROACH, BROWN, McCARTHY & GRUBER, P.C.

               Mark R. Affronti

JOSEPH V. McCARTHY
J. MARK GRUBER
JOHN P. DANIEU
ELIZABETH G. ADYMY
GREGORY T. MILLER
JOEL J. JAVA, JR.
KEVIN D. McCARTHY
KEVIN VASQUEZ HUTCHESON
MATTHEW J. BATT
MARK R. AFFRONTI
ADAM F. DEISINGER
LAUREN E. WEISS

SPECIAL COUNSEL
RUTHANNE WANNOP

**R B**
**M P**
**G**

Roach, Brown,
McCarthy & Gruber, P.C.

OF COUNS
DANIEL T. ROA
T. ALAN BRO

ARTHUR J. MALON
1948 - 2

NURSE CONSULTAN
DOLORES HOOLIHAN, R
LOIS CROPP, R
KATHLEEN BITTNER, R
EILEEN ULRICH, R
MARYELIZABETH M. EKENSTOFT, LI

LEGAL ASSISTANT
KAREN E. BUZZEL
MARIA R. BRA

1920 LIBERTY BUILDING
424 MAIN STREET
BUFFALO, NEW YORK 14202-3619
(716) 852-0400
FAX (716) 852-2535

August 28, 2013

Walter Buckingham
16 Elk Street
Rochester, New York 14615

Re:   Walter Buckingham v. Lewis General Tires, Inc.
Our File No.: 8-12-160
Docket No. 1:13-cv-6264L

Dear Mr. Buckingham:

Please be advised that we are the attorneys for LEWIS GENERAL TIRES, INC. In that regard, I am writing in furtherance of the meet and confer requirement contained in the Federal Rules of Civil Procedure and also Judge Payson's request for same in her letter of August 20, 2013.

Enclosed for your consideration is a proposed Scheduling Order. Please contact me either via telephone or by writing with regard to the dates proposed therein and let me know your thoughts.

Also, during the scheduling conference of October 9, 2013, we will be expected to present our respective positions concerning mediation. In order for me to assess whether efforts in that regard may be fruitful, it would be helpful for me to know what you hope to obtain through this action. As such, I would request that you contact me (either by telephone or in writing) to advise as to a formal proposal for resolution.

Thank you for your time and anticipated cooperation. Should you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

ROACH, BROWN, McCARTHY & GRUBER, P.C.

Mark R. Affronti

Enclosure



JOSEPH V. McCARTHY
J. MARK GRUBER
JOHN P. DANIEU
ELIZABETH G. ADYMY
GREGORY T. MILLER
JOEL K. IAVA, JR.
KEVIN D. McCARTHY
KEVIN VASQUEZ HUTCHESON
MATTHEW J. BATT
MARK R. AFFRONTI
ADAM P. DESINGER
LAUREN E. WEISS

SPECIAL COUNSEL
RUTHANNE WANNOP

Roach, Brown,
McCarthy & Gruber, P.C.

1920 LIBERTY BUILDING
424 MAIN STREET
BUFFALO, NEW YORK 14202-3619
(716) 852-0400
FAX (716) 852-2535

OF COU
DANIEL T. RO
T. ALAN RE

ARTHUR J. MALO
1946-

NURSE CONSULTA
DOLORES HOOLIHAN,
LOIS CROFF,
KATHLEEN BITTNER,
EILEEN ULRICH,
MARYELIZABETH M. BEENSTOFT,

LEGAL ASSISTAN
KAREN E. BUZZE
MARIA E. BRA

September 20, 2013

Hon. Marian W. Payson, USMJ
United States District Court
Western District of New York
2310 United States Courthouse
100 State Street
Rochester, New York 14614

Re:   Walter Buckingham v. Lewis General Tires, Inc.
Our File No.: 8-12-160
Docket No. 1:13-cv-6264L

Dear Judge Payson:

In furtherance of the Scheduling Conference in this matter which has been calendared for October 9, 2013 at 11:00 a.m., please be advised that the parties have indeed conferred as to proposed dates and deadlines as to the remainder of this case. Both parties are in agreement as to possible dates, and thus, for the Court's consideration, enclosed herein is a draft proposed scheduling order which includes the dates to which the parties have agreed.

We thank you for your consideration.

Respectfully,

ROACH, BROWN, McCARTHY & GRUBER, P.C.

Mark R. Affronti

enc.

cc:   Walter Buckingham (w/ enc.)

Mr. Walter Buckingham
16 Elk Street
Rochester, New York 14615

September 9, 2013

Roach, Brown, McCarthy & Gruber, P.C.
Attention: Mark R. Affronti
1920 Liberty Building
424 Main Street
Buffalo, New York 14202

Re: Walter Buckingham vs. Lewis General Tires, Inc.
Attorney's File No. : 8-12-160
Docket No. 1:13-cv-6264L

Dear: Mr. Affronti

I am responding to your correspondence regarding the proposed Scheduling Order and Formal Proposal for resolution.

I have read over the Scheduling Order dates and noticed some discrepancies.  The conference dates in question are listed below.

  • October 9, 2015; should be October 9, 2013-(conference)
  • March 14, 2013; should be March 14, 2014- (factual discovery in case/depositions)

The Scheduling Order dates that would be adequate for me are as follows:

  • November 6, 2013- (mandatory disclosure requirements)
  • November 22, 2013- (motions to join other parties and amend pleadings)
  • December 6, 2013- (third party action)
  • March 14, 2014- (factual discovery in case/depositions)

My formal proposal of resolution is that I would like to be compensated in the amount of $78,000.  This figure is for lost wages, pain and suffering and punitive damages.

Thank you for your prompt attention to this matter.

Sincerely,

Walter Buckingham

Walter Buckingham

**GENERAL TIRE**

**MEMO**



DATE April 30, 2012

WALTER CAME TO WORK AND punched in @ 7:00 AM. ON Monday April 30, 2012. HIS Normal work Schedule IS 8:00 Am to 5:00 pm. When I questioned him AS to why he was starting early his reply WAS that he was here TO work

I ADVISED him that NO employee had permission to ALTER his OWN work Schedule Without prior Approval by Management. When I then told him I would NOT sign off ON An early START he replied that Chuck Troche starts whenever he wants And management lets him. I told him that Chuck works AT managements request only.

# LEWIS GENERAL TIRES, INC.

3870 WEST HENRIETTA RD., ROCHESTER, N.Y. 14623
(585) 334-0900 • FAX (585) 334-4815 • REG. REPAIR SHOP # R5280454

GENERAL TIRE    MEMO

DATE April 26, 2012

AT 8:00 Am on Thursday morning
WALTER APPROACHED me And VEhementLy
QUESTIONED why he was written up
for a No show/No CALL on the previous
SAT (4-21-12)

He stated that he should not be
written up because Chuck Troche did the
same thing and he (WALTER) is sure
that Chuck did not receive a
written reprimand



Sue Mang

# LEWIS GENERAL TIRES, INC.

3870 WEST HENRIETTA RD., ROCHESTER, N.Y. 14623
(585) 334-0900 • FAX (585) 334-4615 • REG. REPAIR SHOP # R5280454

El Simplex                          True Align™

No.:          May 16 2012   Pay Period:

Name: Walter Buckingham

| EXTRA TIME | | | | REGULAR TIME |
|---|---|---|---|---|
| | | A.M. | | WE 08.00 |
| | 1st day | NOON | | |
| | | P.M. | | WE 08.30 |
| | | A.M. | | |
| | 2nd day | NOON | | |
| | | P.M. | | |
| | | A.M. | | |
| | 3rd day | NOON | | |
| | | P.M. | | |
| | | A.M. | | |
| | 4th day | NOON | | |
| | | P.M. | | |
| | | A.M. | | |
| | 5th day | NOON | | |
| | | P.M. | | |
| | | A.M. | | |
| | 6th day | NOON | | |
| | | P.M. | | |
| | | A.M. | | |
| | 7th day | NOON | | |
| | | P.M. | | |
| Total | | | | Total |

TOTAL HOURS SHOWN IS CORRECT

Employee Signature

Approved By

1050-8237   © SIMPLEX TIME RECORDER CO.          1-800-526-8205

# Lewis General Tires, Inc.

### (Since 1919)

3870 W. Henrietta Rd.   Rochester, NY 14623
Phone (585) 334-0900        Fax (585) 334-4615

4/18/12 Meeting with Walter, Manny, Craig, & Dick Lewis

Walter will be excused from work on Saturdays from now until June 2nd in order to care for his mother. Walter is expected to return to work Saturdays on June 2nd. Walter will also be given one week notice before he is expected to return to working on Tuesdays.

Richards Lewis

Manny D'Ambrosio

Craig Lewis

Walter Buckingham

# EMPLOYEE WARNING NOTICE

Employee _Walter Buckingham_

Supervisor _Bob Brabant_                              Date _4/12/12_

| Previous Warnings | Oral | Written | Date | By Whom |
|---|---|---|---|---|
| 1st Warning | | | | |
| 2nd Warning | | | | |
| 3rd Warning | | | | |

**Employer Statement**

Date of incident _3/31/12_ Time _8am_

_Employee did not show up for work and did not call in._

**Employee Statement**

I ___ agree _X_ disagree with Employer's statement. The reasons are: ___

Employee Signature _____  Date __/__/__

**Action to be taken:**
Warning _X_          Suspension _____          Dismissal
Other: _____

Consequences should incident occur again: _Suspension_

I have read this warning and understand it.

Employee Signature _____          Date _4/13/12_

Supervisor Signature _____          Date _4/12/12_

Edition 07/01

LEWIS GENERAL
FROM: Walter Buckingham

APR 13 2012

I will not be able to work on 4/14/2012 due to my mother's illnesses. She has been home
on 24 hour care for several months. She is very ill I need to be there to take care of her
there is no one available to help her on the above day. This is a very trying time for me
and my family. Thank you for your support.

7-29-2011

DICK Lersch
Louie.

SATURDAY
WALTER CAN Work IN RETAIL
Louie Could Work IN THE SHOP

Dick Lersch, Could you
Work THIS, SATURDAY

DICK LEWIS.

## Lewis General Tires Inc - 11056
### Employee Dates

Page 1
Run Date 8/17 at 16:38

**Location: 100 Department: B**

| Employee Name | Emp No. | Birth Date | Hire Date | Term Date | Retire Date | Last Raise |
|---|---|---|---|---|---|---|
| Allen Jr., William H (T) | 000908 | 09/27/1959 | 12/01/2004 | 10/05/2007 | 10/03/2005 | 10/04/2005 |
| Bergson, Christopher J | 000810 | 02/02/1987 | 05/17/2005 | 06/28/2010 | 10/19/2011 | 11/15/2007 |
| Bobb, Shane T (T) | 000816 | 05/03/1979 | 05/12/2006 | 10/03/2006 | | 09/14/2006 |
| Buckingham, Walter R (T) | 000838 | 10/15/1962 | 07/06/2010 | 05/16/2012 | | 07/24/2008 |
| Bukowicz, Steven M (T) | 000774 | 03/21/1970 | 04/08/2002 | 03/03/2011 | 07/22/2008 | 09/05/2006 |
| Burley, Kenneth A | 000793 | 03/02/1971 | 03/22/2004 | | | 11/28/2007 |
| Cuozzo, Michael A (T) | 000821 | 01/06/1961 | 10/02/2007 | 12/31/2008 | | 09/09/1991 |
| Gardner, Harold R (T) | 000536 | 05/16/1942 | 03/09/1991 | 03/03/2011 | | 04/31/2005 |
| Greene, Richard F | 000748 | 10/28/1950 | 08/24/1999 | | | |
| Marsh Jr., Donald L (T) | 000842 | 02/26/1974 | 10/04/2010 | 11/02/2010 | | |
| Rakison Jr., Richard C | 000828 | 02/10/1968 | 08/10/1991 | | | 05/14/2008 |
| Shearer, Greg L | 000759 | 04/11/1957 | 11/08/2000 | | | 10/31/2007 |
| Suehn, Shawn M | 000758 | 07/25/1978 | 09/25/2000 | | 03/21/2005 | 05/31/2005 |
| Stefanowize, Alfed L | 000959 | 03/06/1961 | 07/20/2011 | | | |
| Sumenfeid, Jacob J (T) | 000798 | 05/06/1961 | 10/11/2004 | 05/23/2006 | | 02/01/2005 |
| Thousand Jr., John (T) | 000843 | 12/16/1968 | 11/04/2010 | 12/21/2010 | | 09/03/2005 |
| Torres, Narberto (T) | 000809 | 10/18/1965 | 09/03/2005 | 01/03/2006 | | 04/19/2009 |
| Trache, Charles | 000904 | 03/07/1959 | 12/19/2007 | | | 02/05/2006 |
| Turtie, Paul E | 000925 | 06/20/1968 | 02/27/2006 | | | |

Ovation

Ovation Payroll-Rochester



Dick Lewis

ask me to sign my name
on a Blank sheet of paper
to received 20 dollars in
cash for working in the Retail

Walter

FRI July 29, 2011
4:30 PM

GENERAL TIRE

LEWIS GENERAL TIRE
3870 WEST HENRIETTA RD.
ROCHESTER, NEW YORK 14623

## MEMO




DATE __Friday__

THANKYOU    WALTer

DicK

# LEWIS GENERAL TIRES, INC.

3870 WEST HENRIETTA RD., ROCHESTER, N.Y. 14623
(585) 334-0900   REG. REPAIR SHOP # R5280454

Sheet1

## Walter Buckingham
### Lewis General Tires, Inc.   Employee No. 838   Location 100

| Check Date | Check No | Pay Period | Hourly Rate | Hours Mon-Fri | Regular | Over Time Rate | Over Time Hours | Over Time | TOTAL EARNINGS |
|---|---|---|---|---|---|---|---|---|---|
| 07/16/10 | 31087 | 7/7/10-7/13/10 | 14.00 | 40 | $560.00 | 21.00 | 4.50 | $94.50 | $654.50 |
| 07/23/10 | 31093 | 7/14/10-7/20/10 | 14.00 | 40 | $560.00 | 21.00 | 4.0 | $84.00 | $644.00 |
| 07/30/10 | 31115 | 7/21/10-7/27/10 | 14.00 | 40 | $560.00 | 21.00 | 5.0 | $111.30 | $671.30 |
| 08/06/10 | 31138 | 7/28/10-8/3/10 | 14.00 | 40 | $560.00 | 21.00 | 4.40 | $92.40 | $652.40 |
| 08/13/10 | 31157 | 8/4/10-8/10/10 | 14.00 | 40 | $560.00 | 21.00 | 5.80 | $121.80 | $681.80 |
| 08/20/10 | 31184 | 8/11/10-8/17/10 | 14.00 | 40 | $560.00 | 21.00 | 4.50 | $94.50 | $654.50 |
| 08/27/10 | 31208 | 8/18/10-8/24/10 | 14.00 | 40 | $560.00 | 21.00 | 4.70 | $98.70 | $658.70 |
| 09/03/10 | 31229 | 8/25/10-8/31/10 | 14.00 | 40 | $560.00 | 21.00 | 4.80 | $100.80 | $680.80 |
| 09/10/10 | 31248 | 9/1/10-9/7/10 | 14.00 | 32.60 | $456.40 | 21.00 | 8 (Holiday) | $112.00 | $568.40 |
| 09/17/10 | 31280 | 9/8/10-9/14/10 | 14.00 | 40 | $560.00 | 21.00 | 4.50 | $94.50 | $654.50 |
| 09/24/10 | 31288 | 9/15/10-9/21/10 | 14.00 | 40 | $560.00 | 21.00 | 4.10 | $86.10 | $646.10 |
| 10/01/10 | 31316 | 9/22/10-9/28/10 | 14.00 | 40 | $560.00 | 21.00 | 4.30 | $90.30 | $650.30 |
| 10/08/10 | 31337 | 9/29/10-10/5/10 | 14.00 | 40 | $560.00 | 21.00 | 4.70 | $98.70 | $656.70 |
| 10/15/10 | 31359 | 10/6/10-10/12/10 | 14.00 | 40 | $560.00 | 21.00 | 5.40 | $113.40 | $673.40 |
| 10/22/10 | 31384 | 10/13/10-10/18/10 | 14.00 | 40 | $560.00 | 21.00 | 0.30 | $6.30 | $566.30 |
| 10/22/10 | 31385 | 10/13/10-10/19/10 | 14.00 | Bonus | $100.00 | For Working | Department / In the Retail | | $100.00 |
| 10/29/10 | 31407 | 10/20/10-10/28/10 | 14.00 | 40 | $560.00 | 21.00 | 5.30 | $111.30 | $671.30 |
| 11/05/10 | 31428 | 10/27/10-11/2/10 | 14.00 | 40 | $560.00 | 21.00 | 4.10 | $86.10 | $646.10 |
| 11/12/10 | 31449 | 11/3/10-11/9/10 | 14.00 | 40 | $560.00 | 21.00 | 6.40 | $134.40 | $694.40 |
| 11/19/10 | 31474 | 11/10/10-11/16/10 | 14.00 | 40 | $560.00 | 21.00 | 3.80 | $79.80 | $639.80 |
| 11/26/10 | 31494 | 11/17/10-11/23/10 | 14.00 | 40 | $560.00 | 21.00 | 3.90 | $81.90 | $641.90 |
| 12/03/10 | 31516 | 11/24/10-11/30/10 | 14.00 | 37.20 | $520.80 | 21.00 | 8 (Holiday) | $112.00 | $632.80 |
| 12/10/10 | 31535 | 12/1/10-12/7/10 | 14.00 | 40 | $560.00 | 21.00 | 2.60 | $54.60 | $614.60 |
| 12/17/10 | 31561 | 12/8/10-12/14/10 | 14.00 | 40 | $560.00 | 21.00 | 5.40 | $113.40 | $673.40 |
| 12/24/10 | 31583 | 12/15/10-12/21/10 | 14.00 | 40 | $560.00 | 21.00 | 4.6 | $96.60 | $656.60 |
| 12/31/10 | 31599 | 12/22/10-12/28/10 | 14.00 | 37.60 | $528.40 | 21.00 | 8 (Holiday) | $112.00 | $640.40 |
| 01/07/11 | 31614 | 12/29/10-1/4/11 | 14.00 | 32.10 | $449.40 | 21.00 | 8 (Holiday) | $112.00 | $561.40 |
| 01/14/11 | 31629 | 1/5/11-1/11/11 | 14.00 | 40 | $560.00 | 21.00 | 4.90 | $102.90 | $662.90 |
| 01/21/11 | 31648 | 1/12/11-1/18/11 | 14.00 | 40 | $560.00 | 21.00 | 2.90 | $60.90 | $620.90 |
| 01/28/11 | 31663 | 1/19/11-1/25/11 | 14.00 | 40 | $560.00 | 21.00 | 4.30 | $90.30 | $650.30 |
| 02/04/11 | 31677 | 1/26/11-2/1/11 | 14.00 | 39.60 | $554.40 | 21.00 | | | $554.40 |
| 02/11/11 | 31690 | 2/1/11-2/8/11 | 14.00 | 40 | $558.60 | 21.00 | 3.60 | $75.60 | $635.60 |
| 02/25/11 | 31721 | 2/16/11-2/22/11 | 14.00 | 40 | $558.60 | 21.00 | | | $558.60 |
| 03/04/11 | 31736 | 02/23/11 | 14.00 | 40 | $560.00 | 21.00 | 3.0 | $63.00 | $623.00 |
| 03/11/11 | 31750 | 3/2/11-3/8/11 | 14.00 | 40 | $560.00 | 21.00 | 3.80 | $79.80 | $639.80 |
| 03/18/11 | 31766 | 3/9/11-3/15/11 | 14.00 | 40 | $560.00 | 21.00 | 0.10 | $2.10 | $562.10 |
| 03/25/11 | 31781 | 3/16/11-3/22/11 | 14.00 | 40 | $560.00 | 21.00 | 0.10 | $2.10 | $562.10 |
| 04/01/11 | 31797 | 3/23/11-3/29/11 | 14.00 | 40 | $560.00 | 21.00 | 3.30 | $69.30 | $629.30 |
| 04/08/11 | 31810 | 3/30/11-4/5/11 | 14.00 | 40 | $560.00 | 21.00 | 3.70 | $77.70 | $637.70 |
| 04/15/11 | 31823 | 4/6/11-4/12/11 | 14.00 | 40 | $560.00 | 21.00 | 3.0 | $63.00 | $623.00 |
| 04/22/11 | 31838 | 4/13/11-4/19/11 | 14.00 | 40 | $560.00 | 21.00 | 3.90 | $81.90 | $641.90 |
| 04/29/11 | 31852 | 4/20/11-4/26/11 | 14.00 | 40 | $560.00 | 21.00 | 3.80 | $79.80 | $639.80 |
| 05/06/11 | 31864 | 4/27/11-5/3/11 | 14.00 | 40 | $560.00 | 21.00 | 4.40 | $92.40 | $652.40 |
| 05/13/11 | 31877 | 5/4/11-5/10/11 | 14.00 | 40 | $560.00 | 21.00 | 3.30 | $69.30 | $629.30 |
| 05/20/11 | 31892 | 5/11/11-5/17/11 | 14.00 | 40 | $560.00 | 21.00 | 3.60 | $75.60 | $635.60 |
| 05/27/11 | 31908 | 5/18/11-5/24/11 | 14.00 | 40 | $560.00 | 21.00 | 1.90 | $39.90 | $599.90 |

- YTD $16,417.00  2011
- YTD $4,886.00
- YTD $7,273.00
- YTD $11,097.10
- YTD $12,961.90

Sheet1

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/03/11 | 31920 | 5/25/11-5/31/11 | 14.00 | 31.80 | $445.20 | 21.00 | 8 (Holiday) | $112.00 | $557.20 | |
| 06/10/11 | 31934 | 6/1/11-6/7/11 | 14.00 | 40 | $560.00 | 21.00 | 4.0 | $84.00 | $644.00 | |
| 06/17/11 | 31950 | 6/8/11-6/14/11 | 14.00 | 40 | $560.00 | 21.00 | 1.40 | $29.40 | $589.40 | |
| 06/24/11 | 31965 | 6/15/11-6/21/11 | 14.00 | 40 | $560.00 | 21.00 | 3.70 | $77.70 | $637.70 | |
| 07/01/11 | 31978 | 6/22/11-6/28/11 | 14.00 | 40 | $560.00 | 21.00 | 3.80 | $79.80 | $639.80 | |
| 07/08/11 | 31991 | 6/29/11-7/5/11 | 14.00 | 34.10 | $477.40 | 21.00 | 8 (Holiday) | $112.00 | $589.40 | |
| 07/15/11 | 32003 | 7/6/11-7/12/11 | 14.00 | 40 | $560.00 | 21.00 | 3.50 | $73.50 | $633.50 | |
| 07/22/11 | 32017 | 7/13/11-7/19/11 | 14.00 | 40 | $560.00 | 21.00 | 3.60 | $75.60 | $635.60 | |
| 07/29/11 | 32031 | 7/20/11-7/26/11 | 14.00 | 36 | $504.00 | | | | $504.00 | YTD $ 19,086.90 |
| 08/05/11 | 32043 | 7/27/11-8/2/11 | 14.00 | 40 | $560.00 | 21.00 | 6.40 | $134.40 | $694.40 | |
| | | | ONE YEAR TOTAL : FROM JULY 2010 – JULY 2011 | | | | | (Earnings) | $35,503.90 | |

**Payroll history from July 2010 to May 2012**

| Date | Check # | Pay Period | Rate | Hours | Street | Rate | Vac Hrs | Vac Amt | Total |
|---|---|---|---|---|---|---|---|---|---|
| 08/12/11 | 32056 | 8/3/11-8/9/11 | 14.00 | 40 | $560.00 | 21.00 | 4.8 | $100.80 | $680.80 |
| 08/19/11 | 32070 | 8/10/11-8/16/11 | 14.00 | 40 | $560.00 | 21.00 | 5.40 | $113.40 | $673.40 |
| 08/26/11 | 32082 | 8/17/11-8/23/11 | 14.00 | 40 | $560.00 | 21.00 | 3.20 | $67.20 | $627.20 |
| 08/02/11 | 32094 | 8/24/11-8/30/11 | 14.00 | 40 | $560.00 | 21.00 | 1.70 | $35.70 | $595.70 |
| 09/09/11 | 32109 | 8/31/11-9/6/11 | 14.00 | 31.70 | $443.80 | 21.00 | 8 (Holiday) | $112.00 | $555.80 |
| 09/16/11 | 32123 | 9/7/11-9/13/11 | 14.00 | 40 | $560.00 | 21.00 | 3.80 | $79.80 | $639.80 |
| 09/23/11 | 32139 | 9/14/11-9/20/11 | 14.00 | 40 | $560.00 | 21.00 | 3.80 | $81.80 | $641.90 |
| 09/30/11 | 32154 | 9/21/11-9/27/11 | 14.00 | 40 | $560.00 | 21.00 | 3.50 | $73.60 | $633.50 |
| 10/07/11 | 32167 | 9/28/11-10/4/11 | 14.00 | 40 | $560.00 | 21.00 | 5.10 | $107.10 | $667.10 |
| 10/14/11 | 32180 | 10/5/11-10/11/11 | 14.00 | 40 | $560.00 | 21.00 | 4.60 | $96.80 | $656.60 |
| 10/21/11 | 32198 | 10/12/11-10/18/11 | 14.00 | 39.80 | $557.20 | 21.00 |  |  | $557.20 |
| 10/28/11 | 32210 | 10/19/11-10/25/11 | 14.00 | 40 | $560.00 | 21.00 | 4.10 | $86.10 | $646.10 |
| 11/04/11 | 32223 | 10/26/11-11/1/11 | 14.00 | 40 | $560.00 | 21.00 | 3.10 | $65.10 | $625.10 |
| 11/10/11 | 32237 | 11/2/11-11/8/11 | 14.00 | 40 | $560.00 | 21.00 | 5.20 | $109.20 | $669.20 |
| 11/18/11 | 322253 | 11/9/11-11/15/11 | 14.00 | 40 | $560.00 | 21.00 | 3.80 | $79.80 | $639.80 |
| 11/25/11 | 32289 | 11/16/11-11/22/11 | 14.00 | 40 | $560.00 | 21.00 | 4.10 | $86.10 | $646.10 |
| 12/09/11 | 32302 | 11/30/11-12/6/11 | 14.00 | 40 | $560.00 | 21.00 | 0.8 | $16.80 | $576.80 |
| 12/23/11 | 32338 | 12/14/11-12/20/11 | 14.00 | 40 | $560.00 | 21.00 | 3.90 | $81.90 | $641.90 |
| 01/06/12 | 32369 | 12/28/12-1/3/12 | 14.00 | 35.60 | $498.40 | 21.00 | 8 (Holiday) | $112.00 | $610.40 |
| 01/13/12 | 32383 | 01/4/12-01/10/12 | 14.00 | 40 | $560.00 | 21.00 | 5.20 | $109.20 | $669.20 |
| 01/20/12 | 32400 | 1/11/12-1/17/12 | 14.00 | 40 | $560.00 | 21.00 | 5.70 | $119.70 | $679.70 |
| 01/27/12 | 32416 | 1/18/12-1/24/12 | 14.00 | 40 | $560.00 | 21.00 | 4.20 | $88.20 | $648.20 |
| 02/03/12 | 32431 | 1/25/12-1/31/12 | 14.00 | 40 | $560.00 | 21.00 | 4.10 | $86.10 | $646.10 |
| 02/10/12 | 32445 | 2/1/12-2/7/12 | 14.00 | 39 | $558.60 | 21.00 |  |  | $558.60 |
| 02/17/12 | 32462 | 2/8/12-2/14/12 | 14.00 | 40 | $560.00 | 21.00 | 3.90 | $81.90 | $641.90 |
| 02/24/12 | 32477 | 2/15/12-2/21/12 | 14.00 | 40 | $560.00 | 21.00 | 3.60 | $75.60 | $635.60 |
| 02/02/12 | 32490 | 2/22/12-2/28/12 | 14.00 | 32.20 | $450.80 | 21.00 |  |  | $450.80 |
| 03/09/12 | 32503 | 2/29/12-3/6/12 | 14.00 | 36.20 | $508.80 | 21.00 |  |  | $508.80 |
| 03/16/12 | 32518 | 3/7/12-3/13/12 | 14.00 | 36.10 | $505.40 | 21.00 |  |  | $505.40 |
| 03/23/12 | 32533 | 3/14/12-3/20/12 | 14.00 | 32.00 | $448.00 | 21.00 |  |  | $448.00 |
| 03/30/12 | 32548 | 3/21/12-3/27/12 | 14.00 | 40.00 | $560.00 | 21.00 | 5.10 | $107.10 | $667.10 |
| 04/06/12 | 32561 | 3/28/12-4/3/12 | 14.00 | 32.40 | $453.60 | 21.00 |  |  | $453.60 |
| 04/13/12 | 32574 | 4/4/12-4/10/12 | 14.00 | 32.70 | $457.80 | 21.00 |  |  | $457.80 |
| 04/20/12 | 32589 | 4/11/12-4/17/12 | 14.00 | 31.40 | $439.60 | 21.00 |  |  | $439.60 |
| 04/27/12 | 32603 | 4/18/12-4/24/12 | 14.00 | 32.00 | $448.00 | 21.00 |  |  | $448.00 |
| 05/04/12 | 32617 | 4/25/12-5/1/12 | 14.00 | 33.60 | $470.40 | 21.00 |  |  | $470.40 |
| 05/11/12 | 32632 | 5/2/12-5/8/12 | 14.00 | 32.40 | $453.60 | 21.00 |  |  | $453.60 |
| 05/18/12 | 32647 | 5/9/12-5/15/12 | 14.00 | 33.30 | $466.20 | 21.00 |  |  | $466.20 |
| 05/18/12 | 32648 | 5/9/12-5/15/12 | 14.00 | 44.00 | $616.00 | 21.00 |  |  | $616.00 |

YTD $ 31,714.90

YTD $ 11,473.00

VACATION PAYCHECK

*Note: Pay dates 5/18/12 & Check #'s 32647; 32648 are the last paychecks received after being terminated