1

```
 1                UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF NEW YORK
 2

 3  - - - - - - - - - - - - - X
    WALTER BUCKINGHAM,                    13-CV-6264(W)
 4             Plaintiff
    vs.
 5                                        Rochester, New York
    LEWIS GENERAL TIRES, INC.,            May 31, 2016
 6             Defendant.                 3:25 p.m.
    - - - - - - - - - - - - - X
 7

 8

                      TRANSCRIPT OF PROCEEDINGS
 9          BEFORE THE HONORABLE MARIAN W. PAYSON
                  UNITED STATES MAGISTRATE JUDGE
10

11

12

                      WALTER BUCKINGHAM, PRO SE
13                    16 Elk Street
                      Rochester, New York 14615
14

15                    ROACH BROWN MCCARTHY & GRUBER, P.C.
                      BY: MARK R. AFFRONTI, ESQ.
16                    1920 Liberty Building
                      424 Main Street
17                    Buffalo, New York 14202
                      Appearing on behalf of the Defendant
18

19
    AUDIO RECORDER:    Catherine A. Marr
20

21  TRANSCRIBER:       Christi A. Macri, FAPR-CRR
                       Kenneth B. Keating Federal Building
22                     100 State Street, Room 2120
                       Rochester, New York 14614
23

24

25  (Proceedings recorded by electronic sound recording,
    transcript produced by computer).
```

## P R O C E E D I N G S

\*    \*    \*

(**WHEREUPON**, the defendant is present).

**THE CLERK:** All rise.

**MAGISTRATE JUDGE PAYSON:** Please be seated.

**THE CLERK:** Walter Buckingham vs. Lewis General Tires Incorporated, 13-CV-6264(W).

**MAGISTRATE JUDGE PAYSON:** All right, good afternoon, Mr. Buckingham, Mr. Affronti.  We've got a number of motions.

Mr. Buckingham has filed various motions which relate to his dissatisfaction with certain responses made by the defendant to discovery issues propounded -- discovery requests propounded by Mr. Buckingham.

I know, Mr. Affronti, that one of the issues that you raise was that there had not been a meet-and-confer.  My thought was that you all are here to address discovery issues that are the subject of a motion to compel filed by the defendant.  It makes sense to see whether we can move forward and resolve as many discovery issues as possible rather than have yet another date to come back in and go through oral argument.

I will say, Mr. Buckingham, that Mr. Affronti's objections are, you know, are appropriate in the sense that they do reflect the requirement by the rules that you're not allowed to file a motion on discovery unless you have made

1    efforts to try to resolve that dispute in the first instance

2    with the opposing side, the party who is objecting to

3    discovery.

4            So if there are discovery issues, what you need to

5    do is in the first instance try to resolve them with the other

6    side.  If you cannot, then in your motion papers you have to

7    say I have tried to resolve these issues, you know, I called

8    Mr. Affronti on such and such a day, we had a two hour

9    conversation, we could not resolve them, he told me that he

10   was not going to change his position; or here are copies of

11   letters that went back and forth that show that we can't

12   resolve them.

13           But you have to put in an affidavit and the

14   affidavit has to demonstrate the efforts that you went to to

15   try to resolve the issues because lots of times there are

16   discovery issues in which one party makes a discovery request

17   and the other party then says -- and then they come to court

18   and then the other party says, oh, that's what you were

19   looking for?  Well, I didn't understand that, you know, I'm

20   happy to give you that, and the Court says, gee, we didn't

21   really need to come to court for that.

22           So that's the -- that's the theory behind it.  It

23   seems to me, Mr. Affronti, that if you, you know, at this

24   stage I think it's probably more -- more effort on your part

25   if I say, okay, I'm now going to make you come back and go

1   through these requests one by one with Mr. Buckingham.

2            You know, I suspect that some of the issues that

3   you had are issues that -- issues that we had which was not

4   understanding entirely what Mr. Buckingham was looking for or

5   how what he was looking for was relevant from Mr. Buckingham's

6   perspective to the claims.

7            And so what I think I'd like to do is have

8   Ms. Cornetta place on the record her understanding of whatever

9   agreements were reached today.

10           Also place on the record those discovery requests

11   as to which there is a dispute. My view is it's probably

12   helpful if I go ahead and tell you, give you a ruling on those

13   rather than tell you to go back and confer again and then

14   you're not going to resolve them and then you're going to come

15   back and we're going to have to go through this again.

16           So I understand that you did oppose it on that

17   grounds and there is some question as to whether the conferral

18   that the law requires has been done, at least to the extent

19   that it need to be done.

20           And, Mr. Buckingham, if there are any other

21   discovery disputes, I'm certainly going to look at the papers

22   and make sure that I am satisfied that there's no question

23   that you all have talked and tried to resolve it.

24           But hopefully we can move forward and there won't

25   be anymore discovery disputes and this will end up being a

1   more efficient way to proceed.

2           Is that all right with you, Mr. Affronti?

3           **MR. AFFRONTI:** Yes, Your Honor.

4           **MAGISTRATE JUDGE PAYSON:** Okay.  All right, so what

5   I'm going to do now is ask Ms. Cornetta, who met with

6   Mr. Buckingham and Mr. Affronti for I would say about an hour,

7   a little more than an hour and went through Mr. Buckingham's

8   discovery disputes, leaving for me the ones that were raised

9   by defendant's papers and I'll address those in a minute.

10          But let's have Ms. Cornetta place on the record her

11  understanding of where things were left with Mr. Buckingham's

12  request; where there is the necessity for a ruling from the

13  Court, I'll give you that ruling, okay?

14          Okay, go ahead.

15          **MS. CORNETTA:** So first we discussed which discovery

16  demands Mr. Buckingham was interested in discussing and had,

17  you know, were the subject of his motion to compel.

18          Mr. Buckingham indicated that he was seeking

19  further responses to his interrogatories.  The interrogatories

20  and the defendant's responses can be found at docket 58 and

21  docket 62.

22          We went through each of the interrogatories,

23  starting with Interrogatory No. 1, which reads please provide

24  copies of all documents which include the names of dates of

25  all persons that were hired in the Retail Department and

1  Commercial Department regardless if their job employment

2  didn't work out for them, or they quit, from 2012 to present.

3         We discussed this interrogatory and Mr. Affronti

4  represented that he had spoken with his client and that there

5  were no persons hired in either the Retail or

6  Commercial Department from 2012 through the date of his

7  interrogatory response.

8         And so based on that he had no responsive

9  information.

10        **MAGISTRATE JUDGE PAYSON:** Okay.  And Ms. Cornetta's

11  understanding is correct?

12        **MR. AFFRONTI:** That's correct, Your Honor.

13        **MAGISTRATE JUDGE PAYSON:** Okay, motion to compel any

14  further response with respect to Interrogatory No. 1 is

15  denied.

16        **MS. CORNETTA:** Okay.  With respect to

17  Interrogatory No. 2, the request reads please provide copies

18  of all documents which include employment advertisements for

19  open positions in the Retail Department and

20  Commercial Department through ads, internet, Craigslist, Penny

21  Saver, e-mails, employees, managers, supervisors and owners.

22        With respect to this interrogatory, Mr. Affronti,

23  and, in fact, in the interrogatory response there was one ad

24  that was identified that was placed on Craigslist.

25        **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

1    **MS. CORNETTA:** Mr. Affronti represented that he

2  spoke with his client and that his client conducted a search

3  for any versions of that advertisement.  His client indicated

4  to him that they had no versions of the advertisement in their

5  possession.

6         And that they also conducted a search for any other

7  advertisements that would be responsive to the interrogatory

8  and that his client had indicated to him that there were no

9  additional responsive ads.

10         **MAGISTRATE JUDGE PAYSON:** Okay.  And that's a

11  correct understanding, Mr. Affronti?

12         **MR. AFFRONTI:** That is correct, Your Honor.

13         **MAGISTRATE JUDGE PAYSON:** Okay, motion to deny --

14  excuse me, the motion to compel any further response to

15  Interrogatory No. 2 is denied.

16         Before we continue, Mr. Buckingham, are you looking

17  for paper and a pen to make notes?

18         **MR. BUCKINGHAM:** No.  What I want to say is, Your

19  Honor, when they say they have ads in the paper, they placed

20  the ad for a position of a mechanic, which was around the same

21  time I retrieved the ad, which was looking for a tire

22  technician.

23         **MAGISTRATE JUDGE PAYSON:** Well, my understanding is

24  Mr. Affronti said his client looked to see whether they had

25  copies of any such advertisements in their records, and at the

1  time the interrogatories were served the answer was no, right?

2  That was being requested there?

3          MS. CORNETTA: Yeah, there were two -- two

4  departments, Retail Department and Commercial Department,

5  advertisements for open positions and Mr. Affronti had

6  represented that his client identified one, but that they no

7  longer had possession of it.

8          MAGISTRATE JUDGE PAYSON: Right.

9          MS. CORNETTA: And that they looked for any other

10  advertisements that would be responsive and that they

11  indicated they don't have possession of any.  That was what he

12  had represented to me.

13          MAGISTRATE JUDGE PAYSON: Okay.  And what I don't

14  want to do is sort of reargue all these.  I'm going to have

15  Ms. Cornetta place on the record what was said, I'm going to

16  make rulings on them and then we're going to move on to the

17  next motions.

18          I thought you were looking for something to make --

19          MR. BUCKINGHAM: No, I want to know if I can use

20  that ad that I retrieved versus the ad that they said they

21  didn't have any ads for tire technician that they couldn't

22  retrieve.

23          MAGISTRATE JUDGE PAYSON: I can't advise you with

24  respect to whether something is going to be admitted as

25  evidence at a trial or on a motion.  I just can't give you

1   that advice.  It has to meet certain evidentiary requirements.

2            But that's something that, you know, you're free to

3   attempt to do.  I can't tell you -- you're not precluded from

4   trying to do that, but I can't tell you whether the District

5   Court is going to allow that in.

6            **MR. BUCKINGHAM:** So is you saying they not gonna be

7   forced to turn over --

8            **MAGISTRATE JUDGE PAYSON:** I'm saying they

9   represented they have no responsive documents, so I am taking

10  that representation and I'm denying the motion, okay?

11           Go ahead.

12           **MS. CORNETTA:** Interrogatory No. 3 reads please

13  provide copies of all documents which include written

14  agreements, meeting plans, telephone conversations, e-mails,

15  names, persons, specific involvement, times and dates on Lewis

16  General Tires Incorporated, treasurer controller Manny

17  D'Ambrosio, orders for unjust termination of I, Walter

18  Buckingham.

19           We discussed this interrogatory and the defendant's

20  objection that they -- they thought the interrogatory was

21  unclear.  Mr. Buckingham had indicated that what he was

22  searching for with respect to this interrogatory was written

23  agreements concerning his employment with Lewis General Tires

24  .

25           And in specifics he had identified a document

1 regarding his return to work on Mondays through Fridays

2 beginning on June 2nd.

3             And Mr. Affronti represented that he would go back

4 to his client.  He thinks that he knows what document

5 Mr. Buckingham is talking about.  He thinks it was provided

6 already in initial disclosures, but that he would go back and

7 look for that document and if it wasn't produced, he would

8 produce it.

9             **MAGISTRATE JUDGE PAYSON:** Okay.  Mr. Affronti, just

10 so that we can make sure we don't lose track of things here,

11 it's the 31st.  Can I ask you that that search, and assuming

12 you find that document, that the document be produced by no

13 later than 30 days from today, which would be June 30th?

14             **MR. AFFRONTI:** Oh, absolutely, Your Honor.

15             **MAGISTRATE JUDGE PAYSON:** And it may well be you

16 have that in hand and can produce it to Mr. Buckingham much

17 sooner than that, but in no event later than June 30th.

18             So, Mr. Buckingham, with respect to

19 Interrogatory No. 3, Mr. Affronti has indicated that he's

20 going to go and look for that agreement and get that to you by

21 no later than June 30th, okay?

22             **MR. BUCKINGHAM:** Okay.

23             **MAGISTRATE JUDGE PAYSON:** All right.

24             **MS. CORNETTA:** Interrogatory No. 4 reads please

25 identify the names, actual street address and telephone

1   numbers of all persons, companies, affiliations and parties

2   who have given conversations, written and recorded statements,

3   also e-mails to Lewis General Tires, Inc. and their attorneys

4   concerning the subject matter of the lawsuit.

5          We discussed this interrogatory, again the

6   defendants had objected on the grounds that the interrogatory

7   was unclear.  They also objected to the extent the

8   interrogatory sought any attorney-client or work product

9   privileged materials.

10         Mr. Buckingham had indicated that what he was

11  seeking in response to this interrogatory was the identity of

12  the individual who told an individual named Manny to terminate

13  him.

14         Mr. Affronti represented that he would go back to

15  his client and attempt to identify any individual that had

16  instructed Manny to terminate Mr. Buckingham to the extent

17  they can identify an individual and such an individual exists.

18         **MAGISTRATE JUDGE PAYSON:** Okay.

19         **MS. CORNETTA:** He also maintained his objection to

20  producing any kind of information that Mr. Buckingham

21  identified he was seeking any identities of anybody that met

22  with Mr. Affronti, and Mr. Affronti objects on the grounds of

23  attorney-client privilege and work product.

24         **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

25         **MS. CORNETTA:** And that issue would need a ruling

1 | from the Court.

2 |      **MAGISTRATE JUDGE PAYSON:** Okay.  Mr. Buckingham, you

3 | want to know -- you think somebody told Manny to fire you?

4 |      **MR. BUCKINGHAM:** In our conversation, I turned over

5 | written transcript of everything that was said between me and

6 | Manny.

7 |      **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

8 |      **MR. BUCKINGHAM:** He made it clear I was terminated.

9 |      **MAGISTRATE JUDGE PAYSON:** And there's something in

10 | that transcript that makes you think that --

11 |      **MR. BUCKINGHAM:** -- because I was saying to him --

12 |      **MAGISTRATE JUDGE PAYSON:** -- let's not talk over

13 | each other because somebody may have to prepare a transcript

14 | of this.

15 |      **MR. BUCKINGHAM:** I'm sorry.

16 |      **MAGISTRATE JUDGE PAYSON:** You think that that

17 | transcript shows that someone told Manny to fire you; is that

18 | right?

19 |      **MR. BUCKINGHAM:** Correct.

20 |      **MAGISTRATE JUDGE PAYSON:** And you want to know who

21 | that person is or persons?  It's one person is your

22 | understanding?

23 |      **MR. BUCKINGHAM:** Yes.

24 |      **MAGISTRATE JUDGE PAYSON:** Okay.  I am going to

25 | direct Mr. Affronti to identify in response to -- that's

1    Interrogatory 4, right?

2              **MS. CORNETTA:** No. 4.

3              **MAGISTRATE JUDGE PAYSON:** -- in response to

4    Interrogatory 4 any persons who directed --

5              **MS. CORNETTA:** That Manny D'Ambrosio.

6              **MR. BUCKINGHAM:** Yes, because there's a contract

7    that was signed by the owner and Manny --

8              **MAGISTRATE JUDGE PAYSON:** Okay.  All right. Any

9    person who directed -- and just so nobody at the client draws

10   lines that end up being, I think, too close to the edge, I'm

11   going to say who directed or suggested that Manny D'Ambrosio

12   terminate Mr. Buckingham.

13             So I am going to direct that Mr. Affronti answer

14   the interrogatory to the extent that it seeks that

15   information, and that that response be provided to

16   Mr. Buckingham by no later than June 30th.

17             With respect to Mr. Buckingham's request that the

18   defendant identify those individuals who spoke to Mr. Affronti

19   concerning Mr. Buckingham's termination or the subject matter

20   of this litigation, I am going to deny that request on the

21   grounds of privilege.

22             **MS. CORNETTA:** Interrogatory No. 5 reads please

23   identify the total number of blacks who applied for jobs with

24   Lewis General Tires Inc. and how many of them were actually

25   awarded employment from 2012 to present .

1          We discussed this interrogatory.  Mr. Affronti

2     represented that his client, Lewis General Tires, does not

3     keep records of the race or national origin of its employees

4     and that its application has no place on the application to

5     indicate or self-identify an applicant's race or national

6     origin and, therefore, that his client was unable to provide

7     any information in response to this interrogatory.

8          **MAGISTRATE JUDGE PAYSON:** Okay.  That doesn't

9     surprise me that the application doesn't have a space to

10    identify race.  People sometimes assume that race is obvious

11    and sometimes those assumptions are not correct.

12         Mr. Buckingham's lawsuit certainly raises

13    allegations of race discrimination.  Mr. Buckingham was an

14    employee, he was hired --

15         **MR. BUCKINGHAM:** Yes.

16         **MAGISTRATE JUDGE PAYSON:** -- by Lewis General Tires.

17    This is not a failure to hire case.

18         But having said that, and this observation

19    permeates a couple of the other requests, what I want to make

20    sure is that as a matter of fairness, I understand

21    Mr. Buckingham said in the conference that he believes he was

22    the only African-American employee at Lewis General Tires

23    during the entire period of your employment or in your

24    department or what?

25         **MR. BUCKINGHAM:** During the time period of my

1   employment, but that's not the only thing.  It's what I heard

2   when I was in the restroom stall.

3        **MAGISTRATE JUDGE PAYSON:** Let me focus on the first

4   part.  Your belief is that you were the only African-American

5   employee at Lewis General Tires during the period of your

6   employment?

7        **MR. BUCKINGHAM:** Yes, I was.

8        **MAGISTRATE JUDGE PAYSON:** Okay.  And what it seems

9   fair to me is that if the defendant is saying we don't keep a

10  record of anybody's race or national origin, we can't go to a

11  file and say there were four African-American employees, that

12  you are not going to come in at trial or on summary judgment

13  motion with an affidavit of somebody who says oh, in fact,

14  there were three African-American employees who worked in this

15  department or that department and here they are.

16       So I think, Mr. Buckingham, if your position on a

17  summary judgment motion and at a trial is going to be we can't

18  tell you whether there were other African-American employees

19  at Lewis General Tires, Mr. Buckingham says there weren't,

20  we're not in a position to say he's right or not right, then,

21  you know, I think the question of who -- who applied is --

22  your position is fine with respect to that particular request.

23       But I don't think it would be fair if you were to

24  then bring some witness forward who says, okay, there's

25  nothing on the application, but you know what?  I interviewed

1    four black people.  You can't -- you can't have it both ways.

2           So I just want to make sure that in answering that

3    way, you are sure that your client is not going to come in and

4    make any representations about, you know, other

5    African-American employees besides Mr. Buckingham at Lewis

6    General Tires during the period of Mr. Buckingham's

7    employment.

8           **MR. AFFRONTI:** No, I understand Your Honor's

9    concern.  I guess I think it's a similar analysis however

10   to -- I mean, we're taking the race issue because that seems

11   to be central to this particular lawsuit, but I think to the

12   extent that this type of issue arises in other cases, I mean,

13   I assume that as a defendant we're typically restricted from

14   bringing in different evidence that was failed to be turned

15   over, whether it's a document request or interrogatory in any

16   type of case.

17          So to the extent that we would spring a surprise at

18   the time of trial, whether it has to do with race or whether

19   it has to do with something else, I think the Court would be

20   in a position to make that ruling anyhow.

21          Based upon our response, my client has informed me

22   that they have no way of keeping records.  They don't keep

23   records of this type of stuff.

24          Do I anticipate that being the case that someone's

25   going to come in and say, well, you shouldn't find for the

1  plaintiff, Your Honor, because I interviewed X-number of

2  minority candidates?  I've never had that conversation with

3  them and I don't anticipate that being part of our case.

4          But I can understand the concern the Court has.

5          **MAGISTRATE JUDGE PAYSON:** Well, I'm not the district

6  judge, but I would be inclined not to allow you to do that.  I

7  mean, this is different than -- it seems to me this is

8  different than finding out evidence that surprises you.

9          This is a question of, you know, doing the

10 diligence that you need to do to respond to requests.

11         Now, you know, it could be that Mr. Buckingham's

12 supervisor, you know, when you talk to Mr. Buckingham's

13 supervisor about race issues in the department where

14 Mr. Buckingham worked would say to you, I know I worked with

15 three other African-American men.  So maybe these individuals

16 didn't self-identify and they're not in the personnel record,

17 but boy, you know, you put Mr. Buckingham's supervisor on the

18 stand, he's going to identify Mr. Buckingham was not the only

19 black man in the department, there were three other people.

20         And Mr. Buckingham should not be in a position to

21 learn that for the first time at trial.  I mean, that's a

22 pretty fundamental element of his case, as I understand it, is

23 that he understands he was the only black person who worked at

24 Lewis General Tires, and that he was terminated -- he

25 contends -- on account of his race.

1      So he is -- would generally be entitled to

2 comparative information and he's entitled to know whether the

3 defendant is going to come in with some evidence, whether it's

4 in the personnel files or through witness testimony, that I

5 think he's entitled to know.

6      He can write in the interrogatory how many black

7 people worked at Lewis General Tires, and you do have an

8 obligation to exercise due diligence in answering that, and I

9 think that obligation would extend beyond just looking at the

10 personnel files.  You would have to say, okay, you know, talk

11 to people who know the answer to that.

12      If you think you need more time to answer that

13 interrogatory because you weren't prepared to go through

14 necessarily all of these, that's fine, I'll give you more time

15 to do that.  I don't want to put you unfairly on the spot.

16      But I think Mr. Buckingham is entitled to know

17 that -- the answer to that question.

18      **MR. AFFRONTI:** Yeah, I would -- Your Honor, if we

19 could have a 30 day kind of timeline for the other issues that

20 we've addressed earlier today, if you'd like me to rephrase

21 that inquiry with the client to be able to find out if they

22 are able to -- I guess I'm trying to choose my words carefully

23 here -- I hesitate to ask them to try to get current employees

24 or even past employees to self-identify as a certain race.  I

25 don't think that would be appropriate.

1          **MAGISTRATE JUDGE PAYSON:** No, I'm not asking that.

2          **MR. AFFRONTI:** But asking them off the top of their

3   head if they know how many black individuals were working

4   there at the time that Mr. Buckingham was working there --

5          **MAGISTRATE JUDGE PAYSON:** How big was Lewis General

6   Tires?

7          **MR. BUCKINGHAM:** They hired -- they can't keep a

8   tire tech there.  They come and go every year.

9          **MAGISTRATE JUDGE PAYSON:** Okay.  And on any given

10  day how many people were --

11         **MR. BUCKINGHAM:** Okay, yeah, three guys on the road,

12  they claim there was only one service guy, we had three guys

13  on the road -- no, four, four on the road, and we had three

14  guys in the shop because commercial is like -- 80% of the

15  company business is commercial.

16         **MAGISTRATE JUDGE PAYSON:** So we're talking about

17  total employees --

18         **MR. BUCKINGHAM:** So we had -- we had --

19         **MAGISTRATE JUDGE PAYSON:** 50?  10?  100.

20         **MR. AFFRONTI:** Without exact numbers, Your Honor, I

21  think we're talking in the range of 40 to 50.

22         **MAGISTRATE JUDGE PAYSON:** 40 to 50 people, okay.

23  What I'm going to do is consistent with the guidance that I

24  have just offered, I am going to direct Mr. Affronti to

25  supplement his response to that interrogatory to address the

1   concerns that I've just raised.

2            And you can look at it, Mr. Buckingham.  If you

3   think there's something more that's required, call

4   Mr. Affronti or send him a letter, something, have a

5   conversation.  And then if you can't work it out, you can come

6   back to me.

7            **MR. BUCKINGHAM:** Okay, can I say one thing?  I just

8   been protecting myself ever since this trial been going on.

9   This guy won't talk to me.  We had to go through a mediator.

10  I had to file with the Court in order to have a mediator.

11           **MAGISTRATE JUDGE PAYSON:** I just indicated what the

12  obligations are.  If you come back to me and say, you know,

13  here are the letters that I sent, here are copies of the

14  letters that I sent to Mr. Affronti and I got no response

15  or --

16           **MR. BUCKINGHAM:** Okay.

17           **MAGISTRATE JUDGE PAYSON:** -- I called him and he

18  never called me back, that's fine.  You've tried to confer

19  under those circumstances.

20           **MR. BUCKINGHAM:** Fine.

21           **MAGISTRATE JUDGE PAYSON:** Okay?  So what I'm saying

22  is, you know, my view is when Mr. Affronti says there hasn't

23  been the effort to confer, he can't make that argument if he's

24  unwilling to confer with you.

25           So I expect he will confer with you and I expect

1    that you will make efforts to confer with him, but all that

2    the law requires is that you make reasonable efforts to confer

3    with him.  If he won't talk to you, then I'll hear your

4    motion.  If he will talk to you and you don't try to talk to

5    him, I'm not going to hear your motion, okay?

6              **MR. BUCKINGHAM:** All right. That way I have some --

7    (inaudible).

8              **MAGISTRATE JUDGE PAYSON:** Do it by letter, then you

9    have a copy of it, okay?

10             **MR. BUCKINGHAM:** All right.

11             **MAGISTRATE JUDGE PAYSON:** Okay.

12             **MS. CORNETTA:** Okay, No. 6, the --

13             **MAGISTRATE JUDGE PAYSON:** Was that 5 or 6?

14             **MS. CORNETTA:** That was 5.  No. 6, please provide

15   copies of all documents, statements, memos, orders that were

16   given out to employees by Lewis General Tires Inc. managers,

17   supervisors and owners including Richard Lewis, Craig Lewis

18   owners, pertaining to this lawsuit to avoid this action being

19   taken against them in this lawsuit.

20             We discussed this interrogatory.  Defendants had

21   objected on the grounds that they couldn't understand the

22   interrogatory.  They did indicate that they had --

23   Mr. Affronti represented that he had looked or asked his

24   client to look for any statements or memos that were issued to

25   all employees after Mr. Buckingham was terminated regarding

1   his termination, and that there were no responsive documents.

2          Mr. Buckingham indicated that he was also looking

3   for any documents that were provided to the investigator at

4   the Division of Human Rights in connection with his claim --

5          **MAGISTRATE JUDGE PAYSON:** Mm-hmm.

6          **MS. CORNETTA:** -- in front of the division.  And

7   Mr. Affronti represented that any information that was

8   provided to the Division of Human Rights was also provided to

9   Mr. Buckingham at that time so he should already have that

10  information.

11         And they had no other responsive information to

12  this interrogatory.

13         **MAGISTRATE JUDGE PAYSON:** Okay, Mr. Affronti, no

14  further responsive information?

15         **MR. AFFRONTI:** No, Your Honor, that's it.

16         **MAGISTRATE JUDGE PAYSON:** Okay.  You have talked

17  with your client and ensured that your client has done a

18  search for memoranda or notes that reflect the decision to

19  terminate Mr. Buckingham, any meetings in which Mr. Buckingham

20  was terminated, any consideration given after the termination

21  about that decision?

22         I mean, you've looked for that?  Because those

23  kinds of records would obviously be central to this case, and

24  I gather from what you said that that is what you have looked

25  for and I presume you've turned over any such records?

1          **MR. AFFRONTI:** Yes, Your Honor.  We -- my client and

2    I went through each one of these, both over the phone and then

3    when I went out to their shop and personally went through

4    everything to find out -- the way I read this was, hey, have

5    you guys handed anything out to your employees --

6          **MAGISTRATE JUDGE PAYSON:** Yeah.

7          **MR. AFFRONTI:** -- regarding Walter Buckingham --

8          **MAGISTRATE JUDGE PAYSON:** Right.

9          **MR. AFFRONTI:** -- and they said no, we don't -- we

10   don't write memos, any of the rest of that stuff.

11          In seeking clarification prior to our appearance on

12   the record here today, I understand that he was looking for

13   documents that may be contained in his employee file which

14   would have been disclosed as part of the presentation to the

15   New York State Division of Human Rights.

16          **MAGISTRATE JUDGE PAYSON:** Okay.  Does -- is there a

17   personnel file for Mr. Buckingham?  I mean, a physical

18   personnel file?

19          **MR. AFFRONTI:** Correct, yes.

20          **MAGISTRATE JUDGE PAYSON:** Okay.  Has that been

21   produced to Mr. Buckingham?

22          **MR. AFFRONTI:** As we've discussed, I believe that

23   was turned over as part of the Rule 26, but it certainly was

24   disclosed to him in the administrative phases of this part.

25          **MAGISTRATE JUDGE PAYSON:** Okay.  I understand --

1  Mr. Buckingham, do you have that personnel file?

2          **MR. BUCKINGHAM:** Excuse me?

3          **MAGISTRATE JUDGE PAYSON:** Do you have your personnel

4  file?

5          **MR. BUCKINGHAM:** Yeah, a copy of my license, yeah, I

6  have that.

7          **MAGISTRATE JUDGE PAYSON:** Well, whatever is in your

8  personnel file, I assume that there are records in there about

9  when you were hired, what you were going to get paid, probably

10 health information or people to contact in the event of an

11 emergency, probably records in there about your termination.

12          Do you have those personnel records?

13          **MR. BUCKINGHAM:** Not in the same file of my

14 termination.

15          **MAGISTRATE JUDGE PAYSON:** Mr. Affronti, I understand

16 that this is -- let me finish -- that this is a burden that

17 you say your client has already born to provide those records

18 to Mr. Buckingham.

19          I am asking you if you would please make another

20 copy of the personnel file and provide that to Mr. Buckingham

21 by no later than June 30th.

22          **MR. AFFRONTI:** Yes, Your Honor.

23          **MAGISTRATE JUDGE PAYSON:** Okay.  Mr. Affronti has

24 represented that there were no memos or documents or

25 correspondence that was issued by Lewis General Tires to any

1  of its employees about Mr. Buckingham and about

2  Mr. Buckingham's termination.

3          **MR. BUCKINGHAM:** I have memos here and it's about

4  Mr. Buckingham.  It's about me.  And it's got a signature on

5  there, I have two memos here.

6          **MAGISTRATE JUDGE PAYSON:** Does that memo show it was

7  distributed to employees?

8          **MR. BUCKINGHAM:** Distribute to someone in the

9  defense for the company against me.  One -- one is stating

10 something that I said and to a supervisor, which I have a

11 contract saying I wasn't even at work on that day.

12         **MAGISTRATE JUDGE PAYSON:** Okay.  Well, I -- the

13 requests themselves are, unfortunately, not the clearest

14 requests.  I'm doing the best I can to assure that

15 Mr. Affronti has provided what I think are the documents that

16 typically are provided in an employment discrimination case,

17 which would be personnel files, documents related to the

18 discipline that is at issue, as well as treatment of anybody

19 who is a comparatively situated employee.

20          To the extent that there are memos there that

21 reference you, you have those memos.

22         **MR. BUCKINGHAM:** Yes.

23         **MAGISTRATE JUDGE PAYSON:** To the extent this

24 particular interrogatory is asking is there some kind of memo

25 that was distributed to a group of people about your

1  termination, Mr. Affronti has said he's checked with the

2  client and the client has represented nobody wrote something

3  up and distributed it to people and say here's what happened

4  to Walter Buckingham.

5       You may have a memo that somebody prepared to say

6  here are the circumstances of -- I don't know what the memo

7  says, but gave it to someone else, but that's not a sort of

8  widely disseminated memorandum that I understood from that

9  request you were asking for.

10      I'm satisfied with the response.  I'm not going to

11  compel any further response to Interrogatory No. 6.

12      Go ahead.

13      **MS. CORNETTA:** Okay, Interrogatory No. 7 and 8 raise

14  the same issue for the Court, so I thought I would just read

15  both of those.

16      **MAGISTRATE JUDGE PAYSON:** Yes.

17      **MS. CORNETTA:** No. 7 reads please provide copies of

18  all documents, statements, memos, orders, conference calls,

19  e-mails and suggestions that were given by Mark R. Affronti,

20  Roach, Brown, McCarthy and Gruber, PC to Lewis General Tires

21  Inc. managers, supervisors and all owners Richard Lewis, Craig

22  Lewis owners, including all employees pertaining to this

23  lawsuit.

24      **MAGISTRATE JUDGE PAYSON:** And that's governed by

25  attorney-client privilege and is protected by attorney-client

1    privilege.  So I'm not going to require any response to that

2    interrogatory.

3              Go ahead.

4              **MS. CORNETTA:** And No. 8 reads please provide copies

5    of all documents, statements, memos, conversations, conference

6    calls, appointments, orders, schedules and names of Lewis

7    General Tires Inc. previous and present employees that met or

8    was advised to meet with attorney Mark R. Affronti, Roach,

9    Brown, McCarthy, Gruber PC at 1920 Liberty Building, 424 Main

10   Street, Buffalo, New York and Rochester, New York location

11   discussing this lawsuit.

12             **MAGISTRATE JUDGE PAYSON:** Okay, and I'm not going to

13   require Mr. Affronti to turn over the names of everybody that

14   he's talked to about the litigation.  That's something that

15   would be protected by work product protection, as well as

16   potentially by the attorney-client privilege and I'm not going

17   to require any further response.

18             **MS. CORNETTA:** Okay.  No. 9 and 11 also raise the

19   same issue -- I'm sorry, not the same issue, but they raise

20   similar issues so I'll read them together.

21             No. 9 reads please provide the company name of your

22   insurance, copies of your insurance that covers injuries,

23   death , fires in the workplace, accidents from unlicensed

24   drivers and DWI drivers performing road service for your

25   company.

1        And No. 11 reads please provide the name, copies of

2   your insurance that covers all fines, environmental, state,

3   federal, penalty charges, waste, Government, tax fines and

4   lawsuits for your company.

5        In response to this -- these two interrogatories,

6   the defendants have objected to providing any insurance

7   information on the grounds that it's not relevant, although in

8   response to Interrogatory No. 10 they did indicate the name of

9   the insurance company that supplied coverage for this lawsuit.

10       **MAGISTRATE JUDGE PAYSON:** You said 9 and 11?

11       **MS. CORNETTA:** Right, I'm sorry.  No.'s 9 and 11

12   they've objected to providing any information.

13       **MAGISTRATE JUDGE PAYSON:** And 10 they gave --

14       **MS. CORNETTA:** I'm noting in No. 10 they did provide

15   the insurance company that would provide coverage for this

16   litigation.

17       **MAGISTRATE JUDGE PAYSON:** Okay.  Mr. Buckingham,

18   what is the relevance of names of insurance companies?

19       **MR. BUCKINGHAM:** Because it's a discrimination case

20   with damages.

21       **MAGISTRATE JUDGE PAYSON:** Okay, and you've gotten

22   the name of the insurance company who would be covering any

23   claims, any of your claims in this case.

24       So what is the relevance of any other insurance

25   companies?

1          **MR. BUCKINGHAM:** I didn't know if that information

2  was still accurate because it's been like three years.

3          **MAGISTRATE JUDGE PAYSON:** All right. Well,

4  Mr. Affronti, you still dealing with the same insurance

5  company?

6          **MR. AFFRONTI:** It's the same people who hired me,

7  Judge, yes.

8          **MAGISTRATE JUDGE PAYSON:** So same insurance company.

9  I'm going to deny any further response to No.'s 9 and 11.

10          **MS. CORNETTA:** And that was all of the --

11          **MAGISTRATE JUDGE PAYSON:** Okay.

12          **MS. CORNETTA:** -- discovery disputes.

13          **MAGISTRATE JUDGE PAYSON:** Okay.  Can I have the

14  papers with respect to Mr. Affronti's motion here?  Thank you.

15          So, Mr. Affronti, you have filed a motion to compel

16  Mr. Buckingham to provide further responses to various

17  interrogatories, document requests.

18          So we'll go through those, okay?

19          **MR. AFFRONTI:** Yes.

20          **MAGISTRATE JUDGE PAYSON:** Anything -- I don't need

21  you to argue them.

22          **MR. AFFRONTI:** No, no.  I just want -- Your Honor,

23  the original request was for dismissal of the action for the

24  fact that this is the third time we're now before Your Honor

25  for information.

1    **MAGISTRATE JUDGE PAYSON:** Okay, I don't intend to

2    recommend to the district judge that Mr. Buckingham's action

3    be dismissed.  I wouldn't have put you through the exercise of

4    responding to Mr. Buckingham's discovery if I intended to do

5    that.

6         But I do want to go through the particular

7    interrogatories and try to get at whether there is some

8    further response that Mr. Buckingham needs to make.

9         Okay, Interrogatory No. 2 asks Mr. Buckingham to

10   identify the manner and respect in which he claims the

11   defendant discriminated against him.  That's Interrogatory No.

12   2.

13        Interrogatory No. 1 had asked for particular dates

14   and to provide more information -- I'm just looking, let's

15   see, document 23 -- all right, Christin, where is 23 I was

16   looking at this morning?

17        So No. 1 had asked Mr. Buckingham to describe

18   incidents on March 31, 2012; April 13th, 2012; May 16th, 2012;

19   May 18th, 2012; and then (e) any other date.

20        And I've looked at Mr. Buckingham's response.  He's

21   provided quite a bit of information with respect to the dates

22   that have been identified in Interrogatory 1 and his

23   interrogatory responses make clear that his answer that he is

24   providing is an answer to Interrogatory 1 and 2.  So the

25   answer should be read as a response to Interrogatory 2 as well

1  as 1.

2          So the question to Mr. Buckingham is are there any

3  other incidents of discrimination that you were subject to

4  other than the particular dates that you have identified in

5  your interrogatory response?

6          **MR. BUCKINGHAM:** Yeah, on the 29th when I was in the

7  restroom stall I overheard two white males saying we don't

8  need no blacks working for our company.

9          Then after that --

10          **MAGISTRATE JUDGE PAYSON:** And you didn't put that in

11  your interrogatory response to 1 and 2?

12          **MR. BUCKINGHAM:** No.

13          **MAGISTRATE JUDGE PAYSON:** Okay.  If there is

14  anything that you would seek to offer evidence on at trial or

15  in a summary judgment motion beyond the four dates that you

16  identified in Interrogatory 1, Interrogatory 2 is asking you

17  to identify any other acts of discrimination in your

18  employment.

19          And if you don't do that, then at trial you risk

20  when you seek to offer that evidence, that the judge will say

21  you didn't identify it in response to your interrogatory, you

22  can't offer that evidence, okay?

23          I know I have seen elsewhere references to -- to an

24  incident in the restroom.  I know I've seen that, but you have

25  to put that in your response; and any other acts of

1   discrimination that you would seek to be offering evidence on.

2   **MR. BUCKINGHAM:** Okay, what about the contract?  I

3   had presented the contract that was signed by Richard Lewis --

4   **MAGISTRATE JUDGE PAYSON:** I can't -- if there's

5   something that -- an event or an incident in your employment

6   in which -- and you are -- you are alleging that you were

7   discriminated against on the basis of your race in that

8   incident or that event then you have to identify, summarize

9   that in response to Interrogatory 2, okay?

10   So if you think there is something about that

11   contract in which you were treated in a manner that was

12   discriminatory against you on the basis of your race, you have

13   to describe that.

14   **MR. BUCKINGHAM:** The contract states that I am

15   returning to work, I am to work, but they fired me before that

16   contract even (inaudible).

17   **MAGISTRATE JUDGE PAYSON:** So if your contention is

18   that that is evidence of their discrimination, then you need

19   to say that.

20   **MR. BUCKINGHAM:** Right.

21   **MAGISTRATE JUDGE PAYSON:** Okay?

22   **MR. BUCKINGHAM:** What form is that?

23   **MAGISTRATE JUDGE PAYSON:** What?

24   **MR. BUCKINGHAM:** On what form is that?  Because I've

25   been submitting all this stuff so I'm submitting all this

1   evidence and -- but it's not being counted.  I don't know

2   what's going on.

3          **MAGISTRATE JUDGE PAYSON:** Well, it is being -- it is

4   being counted.  And, let's see, No. 23, where is the answers?

5   The answers are in which number?

6          **MS. CORNETTA:** 49.

7          **MAGISTRATE JUDGE PAYSON:** 49, okay.  So here's your

8   answers, Mr. Buckingham, look up here, No. 49, you have

9   interrogatories No.'s 1 and 2 and then you answer them here,

10  okay?

11         And you don't say anything in these three pages

12  responding to interrogatories 1 and 2 as far as I can tell

13  about anything in the bathroom or about that back to work

14  agreement.

15         So if you're saying that there are incidents other

16  than these that you have described in the first three pages of

17  document 49, which are your responses --

18         **MR. BUCKINGHAM:** Document 49.

19         **MAGISTRATE JUDGE PAYSON:** -- okay?  You need to send

20  Mr. Affronti and file with the Court a document by no later

21  than June 30th that says supplemental response to

22  interrogatories 1 and 2 and you need to identify any acts or

23  events, identify the manner and respect in which it is claimed

24  the defendant discriminated against you concerning your

25  employment and 1 asks for any other dates.

1       So if there are particular instances or incidences

2  or events besides those that you've already written about in

3  document 49 in which you think the defendant discriminated

4  against you because of your race, you need to describe those,

5  okay?

6       So just send a copy to Mr. Affronti, file with the

7  Court a document, supplemental response to interrogatories 1

8  and 2, in addition to what I have already described in

9  interrogatories 1 and 2 and then list anything, summarize

10 anything else, okay?

11      **MR. BUCKINGHAM:** That's docket 49?

12      **MAGISTRATE JUDGE PAYSON:** That's docket 49 and it's

13 interrogatories 1 and 2.  And I'll give you until June 30th to

14 do that.

15      **MR. BUCKINGHAM:** All right.

16      **MAGISTRATE JUDGE PAYSON:** Okay.  All right,

17 Interrogatory No. 4, previous claims of discrimination.  I'm

18 confused about this because there was at one time some

19 correspondence to the Court in which Mr. Buckingham said that

20 he was subject to a confidentiality order, a settlement

21 agreement that was confidential.

22      I said I would look at that *in camera*.  And then

23 Mr. Buckingham, you wrote me and you said never mind, I'm not

24 asking for you to look at it *in camera* because I'm disclosing

25 it.

1          So are you saying, Mr. Affronti, that you never got

2     that?

3          **MR. AFFRONTI:** I've never gotten anything in

4     response to this interrogatory.

5          **MAGISTRATE JUDGE PAYSON:** And what happened,

6     Mr. Buckingham?  I understood you said you were going to be

7     turning that over.  Why didn't you turn it over?

8          **MR. BUCKINGHAM:** Sent him a letter saying that it's

9     a settlement agreement and the agreement -- I couldn't turn it

10    over because it was an agreement --

11         **MAGISTRATE JUDGE PAYSON:** I'm ordering you to turn

12    it over.  So now you're under court order to turn it over.

13    And to do so by June 30th.

14         **MR. BUCKINGHAM:** Well, I'll have to find the

15    attorney that represented me then because -- and it state on

16    there it's an agreement --

17         **MAGISTRATE JUDGE PAYSON:** Okay, I'm just confused

18    because you sent me a letter and you said never mind, you

19    don't need to review it I --

20         **MR. BUCKINGHAM:** Because you said anything

21    overbroad.  To me that was overbroad.  I didn't think you was

22    gonna have me turn it over.

23         **MAGISTRATE JUDGE PAYSON:** The reason for such

24    request is due to Interrogatory No. 4 has already been

25    answered.

1    And Mr. Affronti is saying you didn't answer it.

2 So what was the basis of your telling me it had been answered

3 if you hadn't answered it?

4    **MR. BUCKINGHAM:** I answered it by -- I told him -- I

5 was telling him that it was a settlement agreement.  I done

6 answered that.  I said due to a settlement agreement, all the

7 information is confidential.

8    And then your letter stated that not to answer

9 anything overbroad, which that make it overbroad, would put me

10 in a lawsuit being sued.

11    **MAGISTRATE JUDGE PAYSON:** Okay, what I'm going to do

12 is when I'm done today I'm going to draft a one paragraph

13 written order that directs you to turn that over to

14 Mr. Affronti.

15    I'm doing that for your benefit so that if anybody

16 ever raises a question, you will have a written document that

17 says -- and I'll say that you objected to turning this over as

18 confidential, but I am ordering you to do that.

19    So you will have a court order if anybody raises

20 anything that you can show and say the judge --

21    **MR. BUCKINGHAM:** Where that leaves me in trying to

22 find employment in Rochester?

23    **MAGISTRATE JUDGE PAYSON:** I don't know where it

24 leaves you, but that's my direction and I'm going to reflect

25 that in an order.  I gave you the opportunity to do things

1 *in camera;* I was prepared to do that.  You told me no, and I

2 understood that you were going to answer it and provide it and

3 you didn't and at this stage I'm going to direct -- okay, I'm

4 done talking about this.

5         **MR. BUCKINGHAM:** All right.

6         **MAGISTRATE JUDGE PAYSON:** Interrogatory No. 5,

7 interrogatory seeks information relating to Mr. Buckingham's

8 attempts to find employment after his termination.

9         You gave a list of potential employers.  I saw

10 that, it was a handwritten list.

11         **MR. BUCKINGHAM:** Yeah.

12         **MAGISTRATE JUDGE PAYSON:** What Mr. Affronti is

13 asking for and what he's entitled to is information about did

14 you speak to anybody at those companies?  Do you have a record

15 of who you spoke to?  When you spoke to them?  Did you

16 interview with anybody?  Did you submit an application?

17         He's entitled to all that information about your

18 efforts because your answer doesn't make clear.  Did you

19 apply?  Did you just make a call?  Did you not even call?

20         So the information that he asks for in

21 Interrogatory 5 is information that by law you are required to

22 give to him because the law says that if the Court or the jury

23 were to -- were to find that the defendant has discriminated

24 against you by firing you, you're entitled to damages.  But

25 the defendant is also entitled to make an argument that your

1  damages should be limited if you didn't make genuine efforts

2  to find other employment.

3         So it's not just enough to say here are potential

4  employers.  They're entitled to know what did you do?  Did you

5  call?  Who did you meet with?

6         So you have to give them more information, you

7  know, if you -- if you can't remember the answers to all of

8  the questions, then you have to say that.

9         **MR. BUCKINGHAM:** Yeah, that's how I found the ads

10 that the company had when I was looking for employment, they

11 were running ads looking for a tire technician.  It's the same

12 position I had.

13        **MAGISTRATE JUDGE PAYSON:** You're saying that these

14 companies you identified were looking for tire technicians?

15        **MR. BUCKINGHAM:** Lewis General Tires looking for a

16 tire technician.

17        **MAGISTRATE JUDGE PAYSON:** I'm confused because

18 there's a list of a bunch of companies.

19        **MR. BUCKINGHAM:** Yeah, yeah.

20        **MAGISTRATE JUDGE PAYSON:** Okay, Mr. Buckingham, pull

21 the base of the microphone closer to you.

22        All right, what page?  Let's see, interrogatory --

23 okay, employment ads hiring the Commercial Department job

24 search, High Fall Mercury Print-Jasco.

25        My question is what does that mean?  Does that mean

1  that you sent an application to them?  That you called them?

2  Or did you follow-up with them in any way?

3        **MR. BUCKINGHAM:** Yeah, I called and -- but they

4  wasn't hiring.

5        **MAGISTRATE JUDGE PAYSON:** All right. Identify and

6  describe each and every perspective employment opportunity you

7  had pursued since May 2012.

8        So it's not asking do you know if there are any

9  companies that are looking for tire technicians.  It's asking

10 what companies did you try to get a job with, either by

11 calling on the phone and saying I see an ad, I'd like to come

12 in for an interview or sending in an application or going in

13 for an interview.

14       It says name, address, description of each

15 potential employer, your efforts to obtain the employment.

16 What did you do to try to get work?  The person or persons

17 with whom you contacted or were in contact with at each such

18 potential employer.  Who, if you have a record, who did you

19 talk to?  Who did you meet with at any of these companies?

20 The status of all efforts concerning future employment?  Is

21 there anybody that you're still interviewing with?  Any

22 company you're still interviewing with?

23       That is the information that you are required to

24 produce.  And if you don't produce that, then it is a grounds

25 for the defendant to seek sanctions.  They're entitled to know

1  if you did nothing to try to find other work after you were

2  terminated --

3            **MR. BUCKINGHAM:** Some on their form.  There's --

4  (inaudible) what's the date on that?

5            **MAGISTRATE JUDGE PAYSON:** I don't know what form

6  you're talking about.  I just see interrogatory -- I just see

7  a list of companies.

8            **MR. BUCKINGHAM:** Yeah, I gave a list at that time.

9            **MAGISTRATE JUDGE PAYSON:** Okay.  I'm not going to --

10  I'm not going to go through this any differently.  They want

11  to know what company did you contact?  Who did you contact?

12  When did you contact?  What did you do in the way of contact?

13  Did you send an application?  Did you meet with them?  Did you

14  call on the phone?  What was the result?  Did they interview

15  you?  Did they say no?  Did they offer you a job?  Are you

16  still pursuing, okay?

17            It's pretty self-explanatory.  What did you do to

18  try to get a job?  If the answer is nothing, you got to say

19  nothing.  If the answer is I called these ten places and they

20  all told me they weren't hiring, you know, you have to say who

21  did you talk to, when did you call , to the extent that you

22  are able to the best of your recollection to provide that or

23  to the extent that you have records; you kept a calendar or

24  something that recorded this.

25            You have to provide that.  Your failure to respond

1 may be a grounds for sanctions, including dismissal of the

2 action.  This is important.  It's important for them to know

3 what efforts did you make to try to find work after you were

4 hired -- after you were fired.

5        **MR. BUCKINGHAM:** I gave the information, the list of

6 the companies that I called.

7        **MAGISTRATE JUDGE PAYSON:** The list of the companies

8 is insufficient as I've now said for four times.  I'm not

9 saying it again.  You have to respond to paragraph 5.

10        I tried to be as clear as I can about what

11 paragraph 5 means.  If you need to consult with somebody else

12 about what paragraph 5 means, you're free to do that.

13        I'm giving you until June 30th to respond fully to

14 Interrogatory 5.  The response, as I see it, which is just a

15 list of company names on page 4 of document 49 is

16 insufficient.

17        All right, there are issues with respect to

18 document requests?

19        **MR. AFFRONTI:** There are, Your Honor.

20        **MAGISTRATE JUDGE PAYSON:** Okay.

21        **MR. AFFRONTI:** Those issues that I did not receive

22 anything.

23        **MAGISTRATE JUDGE PAYSON:** Okay.  Documents relating

24 to Mr. Buckingham's claim for unemployment .

25        You made a claim for unemployment, correct?

1              **MR. BUCKINGHAM:** Yes.

2              **MAGISTRATE JUDGE PAYSON:** Okay.  Do you have a file

3 at home about your unemployment?  Do you have documents

4 relating to your claim for unemployment?

5              **MR. BUCKINGHAM:** No, I just got a document of --

6 when I got paid, unemployment paid me.

7              **MAGISTRATE JUDGE PAYSON:** Okay.  You have copies of

8 payments or --

9              **MR. BUCKINGHAM:** Yeah, payments.

10              **MAGISTRATE JUDGE PAYSON:** Okay.  Do you have any

11 other -- do you have a copy of your application for

12 unemployment?

13              **MR. BUCKINGHAM:** No.

14              **MAGISTRATE JUDGE PAYSON:** Okay.  Did they ask for

15 any documents?  Do you have any correspondence?

16              **MR. BUCKINGHAM:** No, I think it was over the phone.

17              **MAGISTRATE JUDGE PAYSON:** Okay.  All right, your

18 unemployment stubs that you're talking about, you need to make

19 copies of those and give them to Mr. Affronti, okay?

20              **MR. BUCKINGHAM:** Okay.

21              **MAGISTRATE JUDGE PAYSON:** By no later than

22 June 30th.

23              **MR. BUCKINGHAM:** Okay.

24              **MAGISTRATE JUDGE PAYSON:** Okay.

25              **MR. BUCKINGHAM:** Excuse me.  The stub is just a list

1  of dates, it says dates and what they paid.

2          **MAGISTRATE JUDGE PAYSON:** Okay, just make a copy of

3  what you have there.

4          **MR. BUCKINGHAM:** All right.

5          **MAGISTRATE JUDGE PAYSON:** Documents, communications

6  regarding your employment search.  Okay, we've already talked

7  about that.

8          If you have a calendar that has notes in there,

9  today I called so-and-so, or I'm going in to meet with

10  so-and-so, you have to copy those pages and turn them over to

11  Mr. Affronti.

12          If you have copies of letters that you sent out

13  looking for work, if you kept a file because you thought it

14  was relevant of the, you know, copies of advertisements that

15  you responded to.

16          If you don't have any documents, you need to say

17  to Mr. Affronti clearly I have no documents that respond to

18  that, okay?  If you have any documents that respond to that

19  request, you have to turn copies of those over by no later

20  than June 30th.

21          **MR. BUCKINGHAM:** All right, because I have one

22  employer, one employer wanted to know why I wasn't working.  I

23  explained the situation that I was discriminated against, but

24  they --

25          **MAGISTRATE JUDGE PAYSON:** Okay, the question is at

1  home -- at home do you have any notes, do you have any

2  documents, do you have any letters, do you have a copy of an

3  application to that employer?

4           **MR. BUCKINGHAM:** I get the address and --

5           **MAGISTRATE JUDGE PAYSON:** Okay, you have to do that

6  in response to the interrogatory.

7           The documents are asking not for you to create

8  something that doesn't exist.  That's not what the document

9  requests are asking.  The interrogatory is asking you to

10 identify those, but the document request is asking you if at

11 home you have a file, here is a file of the efforts of the

12 applications that I've sent, of the letters I sent, of the

13 letters I've gotten back saying sorry, we're not hiring, you

14 have to make copies of those documents and turn them over to

15 Mr. Affronti by no later than June 30th.

16          If you don't have any such documents, you have to

17 state clearly you have no such -- you've looked and you have

18 no responsive documents in your possession.

19          Documents relating to previous claims of

20 employment.  We've dealt with that with respect to the

21 settlement agreement, and I will make that a subject of an

22 order later today or tomorrow morning, okay?

23          HIPAA authorizations.  Did you bring HIPAA

24 authorizations?  Okay, Mr. Buckingham, you have claimed that

25 as a result of the discrimination that you suffered at Lewis

1  General Tires, that you -- that caused you stress, that you

2  had to take medications that you previously hadn't taken, that

3  you received medical treatment for stress, including treatment

4  for depression, stress, insomnia, hypertension.

5           The law is clear that when you're asking for

6  damages to be awarded on the account of that emotional

7  distress, the fact that you're on medication that you weren't

8  getting before, they're entitled to your medical records,

9  okay?

10          I understand that those medical records are medical

11 records that you're concerned about turning over.

12 Mr. Affronti is not permitted to use that -- those medical

13 records for any purpose other than this litigation, you know,

14 he can't distribute them to the newspaper because he wants to

15 embarrass you about something that's in there.  They can only

16 be used for purposes of this litigation.  But you are required

17 to turn them over within a reasonable period of time.

18          Now, Mr. Buckingham, the first -- when was the

19 first date that you claim you were discriminated against or

20 what period of time?

21          Was it the beginning of 2012?

22          **MR. BUCKINGHAM:** First discrimination was in 2012.

23          **MAGISTRATE JUDGE PAYSON:** 2012, okay.  All right,

24 and then when were you terminated?

25          **MR. BUCKINGHAM:** 2012, May the 16.

1          **MAGISTRATE JUDGE PAYSON:** Okay.  Are you still being

2   treated for emotional distress?

3          **MR. BUCKINGHAM:** No, I have a doctor's letter.

4          **MAGISTRATE JUDGE PAYSON:** Okay, my question is are

5   you still being treated?  Are you still taking any medication

6   for emotional distress?  Are you still experiencing symptoms?

7          **MR. BUCKINGHAM:** No, I take over-the-counter

8   medication so I can sleep.

9          **MAGISTRATE JUDGE PAYSON:** Okay.

10          **MR. BUCKINGHAM:** I have a hard time sleeping.

11          **MAGISTRATE JUDGE PAYSON:** I am going to require that

12   you sign HIPAA authorizations for your medical providers from

13   January 1, 2011 to the present.  It doesn't have to go back

14   any earlier than that, but a year before the discrimination

15   occurred.

16          Mr. Buckingham, the best way that I can explain

17   what the law is on this, and these issues arise all the time.

18   I'm always explaining to people why when they file a lawsuit

19   they have to do exactly what I'm requiring you to do today

20   because you're going to be asking -- eventually going to be

21   asking the jury give me X-amount of money to compensate me for

22   emotional distress caused by what the defendant did, right?

23   That's what you're asking for.

24          They're entitled to know in your -- in your medical

25   records are there references to Mr. Buckingham came in and

1  sought treatment because he was distraught over his divorce?

2  Because then what the defendant is allowed to argue is, yes,

3  he was emotionally distraught, but it wasn't employment; it

4  was a divorce.

5          They're entitled to look at your medical records to

6  see, you know, is there another explanation?  Or contrary to

7  what you say, do your medical records actually show your

8  doctor said Mr. Buckingham -- I see Mr. Buckingham, you know,

9  every month during 2012 and he's happy and cheerful and has no

10  distress.

11          They're entitled to use that information at trial,

12  okay?

13          **MR. BUCKINGHAM:** Okay.  What is it?  The doctor --

14  the doctor letter stating --

15          **MAGISTRATE JUDGE PAYSON:** No, they're allowed to

16  actually look at your records to see what's in your records.

17          **MR. BUCKINGHAM:** During employment I was fine.  I

18  haven't worked for Lewis General Tires all my life and I have

19  turned over my payroll stuff from 2010, 2011 and 2012 that

20  shows I've been to work every day.

21          **MAGISTRATE JUDGE PAYSON:** Okay.

22          **MR. BUCKINGHAM:** And I wasn't sick.  So I got one

23  doctor's letter stating what he treated me for.  And that's

24  what I turned over .

25          **MAGISTRATE JUDGE PAYSON:** Okay.  I am requiring you

1  to sign these authorizations.  Those authorizations allow

2  Mr. Affronti to go to your medical providers and have the

3  medical providers produce to him your medical records from

4  2011 through the present.

5          There may not be anything relevant in those records

6  or there may be relevant information that Mr. Affronti is

7  going to use to say that either you didn't suffer as much as

8  you said you did or there was another cause.

9          It is information that the law says is fair for the

10  defendant to have when a plaintiff is making a claim that he

11  suffered emotional distress because of the discrimination

12  caused by the defendant.  They're entitled to find out is

13  there information in the medical records that shows he

14  suffered distress?  And if so, are there potential other

15  causes, okay?

16          So I'm requiring you to sign those authorizations.

17  You can refuse to do that.  If you refuse to do that, I would

18  then consider whether the action should continue, be permitted

19  to continue or not.

20          It's -- I get this issue a lot.  The law is

21  well-settled and there is a requirement.  If you want to take

22  the -- if you want to sign them today and be done with it, you

23  can sign them today.  If you want to take them and look at

24  them, you have to return them to Mr. Affronti by no later than

25  June 30th, okay?

1          **MR. BUCKINGHAM:** Okay.  That statement, that HIPAA

2    statement doesn't say from 2011 and --

3          **MAGISTRATE JUDGE PAYSON:** Okay --

4          **MR. BUCKINGHAM:** -- to present.

5          **MAGISTRATE JUDGE PAYSON:** You're entitled to have

6    the HIPAA statement limit the period of time to 2011 to the

7    present.  So if it went back earlier than 2011, you're

8    correct, you don't have to sign anything that goes back

9    earlier than 2011.

10          Mr. Affronti, I'm limiting it from 2011 to the

11   present, okay?

12          **MR. BUCKINGHAM:** All right.

13          **MAGISTRATE JUDGE PAYSON:** And those have to be

14   turned over by June 30th unless they can be executed today,

15   okay?

16          I think I've gone through what you had in your

17   motions.  I think I've tried to go through what Mr. Buckingham

18   had in his motions.

19          I've given you both deadlines of June 30th to

20   exchange what you need to exchange because I want the

21   discovery to be complete so we can get this case moving

22   towards a resolution, okay?

23          All right, thank you very much.  Have a nice day.

24          (**WHEREUPON**, the proceedings adjourned at 4:29 p.m.)

25                              *   *   *

1                              **<u>CERTIFICATE OF TRANSCRIBER</u>**

2

3             In accordance with 28, U.S.C., 753(b), I certify that

4  this is a true and correct record of proceedings from the

5  official electronic sound recording of the proceedings in the

6  United States District Court for the Western District of New

7  York before the Honorable Marian W. Payson on May 31, 2016.

8

9  <u>S/ Christi A. Macri</u>

10  Christi A. Macri, FAPR-CRR
    Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25