UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WALTER BUCKINGHAM

               Plaintiff,

       v.

LEWIS GENERAL TIRES, INC.,

             Defendant.
_____

<u>DECISION & ORDER</u>

13-CV-6264W

Currently pending before this Court are motions by defendant Lewis General

Tires, Inc. ("LGT") for discovery sanctions (Docket # 117) and by plaintiff Walter Buckingham

for leave to amend his complaint (Docket # 103) and for orders compelling further discovery

responses from LGT and for sanctions (Docket ## 106, 107, 110, 121). Each of these motions is

addressed below.


## I.    <u>LGT's Motion for Sanctions</u>

Pending before this Court is LGT's third motion for sanctions in the form of an

order dismissing Buckingham's complaint. (Docket # 117). The motion pertains to

Buckingham's failure to produce a copy of a settlement agreement relating to a prior

discrimination lawsuit he had filed. (*Id.*).

On June 1, 2016, this Court ordered Buckingham to produce that agreement.

(Docket ## 92, 93). Buckingham sought reconsideration of the Court's order on the grounds that

the settlement agreement was confidential. (Docket # 97). On July 1, 2016, the Court issued an

order stating its willingness to reconsider the June 1, 2016 order on the condition that

Buckingham submit the settlement agreement to the Court for *in camera* review.  (Docket # 100).  Buckingham neither produced the agreement for *in camera* review nor provided a copy to LGT.  Rather, Buckingham filed another motion for reconsideration asserting that he did not possess the agreement.  (Docket # 101).  The Court denied the motion, noting that Buckingham's previous representations suggested that the agreement existed and that the record did not demonstrate his inability to obtain the agreement from his "former counsel, or another party or agent within Buckingham's control."  (Docket # 102).  The Court declined reconsideration because Buckingham had not provided sufficient information to permit the Court to "conclu[de] that the agreement is not within his control to obtain and produce."  (*Id.*).  The Court again ordered Buckingham to produce the agreement directly to LGT or to the Court for *in camera* review.  (*Id.*).

Buckingham still has not produced a copy of the settlement agreement.  (Docket # 117-1 at ¶ 45).  Instead, Buckingham filed a document alleging that he does not have the settlement agreement and has not possessed it for over ten years.  (Docket # 108).  According to Buckingham, the party who possessed that agreement is now deceased and he does not know where to locate it.  (*Id.*).

In the pending motion, LGT argues that Buckingham's continued refusal to produce the settlement agreement, coupled with his other litigation conduct, warrants the extreme sanction of dismissal.  (Docket # 117-1 at ¶¶ 52-60).  As the Second Circuit has cautioned, "[d]ismissal of a lawsuit, or its analogue, striking an answer, is appropriate if 'there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party;' however, because it is a 'drastic remedy ... it should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'"  *Occhino v. Citigroup Inc.*, 2005 WL

2076588, *11 (E.D.N.Y. 2005) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 789-90 (2d Cir. 1990)).

On the record before the Court in this matter, I find that the extreme sanction of dismissal is not justified *at this stage*.  While Buckingham's refusal to produce the settlement agreement has been at issue in several previous motions, Buckingham has submitted a statement since those motions were determined indicating that the agreement is not in his possession or within his ability to produce.  (Docket # 108).  His statement, however, does not identify the party who last possessed the agreement and is insufficient to prove his inability to produce it.  At this stage, the most efficient manner in which to obtain information about the previous litigation and the settlement of that litigation is to permit counsel for LGT to depose Buckingham on those subjects.  **Accordingly, Buckingham is ordered to appear for a deposition at LGT's counsel's office on April 12, 2017, at 10:00 a.m.  Any unexcused failure to appear may result in the imposition of sanctions, including dismissal of this action.**  During the deposition, LGT may examine Buckingham about facts relating to Buckingham's possession, custody, or control of the agreement.

Buckingham has previously opposed production of the settlement agreement on the grounds that he was contractually obligated to keep the agreement confidential.  "However, the mere fact that [the parties] designated their . . . agreement as confidential does not shield it from discovery." *Laforest v. Honeywell Int'l Inc.*, 2004 WL 1498916, *7 (W.D.N.Y. 2004). Rather, "[t]o be entitled to discovery of a settlement agreement, the party seeking disclosure of the agreement must simply make a minimal showing that its production is likely to lead to the discovery of other relevant evidence." *Levick v. Maimonides Med. Ctr.*, 2011 WL 1673782, *3 (E.D.N.Y. 2011).  Of course, as this Court has previously ordered, the settlement agreement and

information relating thereto may be used solely in connection with this litigation.  Accordingly, Buckingham may not resist providing testimony about or disclosing a copy of the agreement on the grounds that doing so would violate a confidentiality provision.

## II.    Buckingham's Motion to Amend

Plaintiff filed his original *pro se* complaint almost four years ago on May 22, 2013.  (Docket # 1).  The complaint asserted a claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*  (*Id.*).  Following a conference pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, on October 9, 2013, this Court issued a scheduling order that set a deadline of January 31, 2014, for any motions to amend the pleadings or to add parties.  (Docket # 11).  Although this Court subsequently extended some of the deadlines in the original scheduling order, the deadline to amend the pleadings was never extended.  (Docket ## 36, 71).

On June 1, 2016, Buckingham filed an amended complaint.  (Docket # 94).  By Order dated June 7, 2016, the Court determined that Buckingham's filing violated Rule 15 of the Federal Rules of Civil Procedure, which requires a movant either to seek leave of the court or obtain consent of the defendant prior to amending his complaint.  (*See* Docket # 95 (citing Fed. R. Civ. P. 15(a)(2))).  In addition, the Court held that Buckingham's filing, which was unaccompanied by the required motion, did not demonstrate good cause under Rule 16 to amend his complaint after the deadline set by the Court.  (*See id.* (citing Fed. R. Civ. P. 16(b)(4))).

The Court set a deadline of July 7, 2016, for Buckingham to file the required motion seeking leave to amend his complaint.  (*Id.*).  The Court instructed Buckingham:

> In the motion, Buckingham must demonstrate the reasons why any new claims or factual allegations were not included in his original complaint.  If he claims he did not know of the facts underlying those claims and allegations at the time the deadline for filing

motions to amend expired, he should explain when and how he
learned those facts and what efforts he made through discovery or
otherwise to learn them. He must also demonstrate that the new
claims and allegations are proper amendments to his complaint
under Rule 15 of the Federal Rules of Civil Procedure.

*Id.*

On July 19, 2016, Buckingham filed the pending motion for leave to file an
amended complaint. (Docket # 103). The motion fails to comply with the Court's directives
regarding the required content of such a motion. Rather, the one-half page motion does not
purport to address the requirement that he establish good cause for the more than two-year delay
in filing a motion that the Court had ordered be filed by January 2014. (*See id.*). Buckingham's
pending motion merely states, "I was not aware of permission from the court in order to file
amended complaint[;] . . . I [Buckingham] request[ ] pursuant to Rule 15 of the Federal Rules of
Civil Procedure, for leave to file an [Amended Complaint]." (*Id.*).

It is well-established that "the Rule 16(b) 'good cause' standard, rather than the
more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district
court has set for amending the pleadings." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326,
340 (2d Cir. 2000). As the Second Circuit has observed, "despite the lenient standard of Rule
15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after
the deadline set in the scheduling order where the moving party has failed to establish good
cause." *Id.* at 340; *see Phaneuf v. Tenneco, Inc.*, 938 F. Supp. 112, 115 (N.D.N.Y. 1996) ("[i]n
instances where . . . a considerable amount of time has passed between filing the complaint and
the motion to amend, courts have placed the burden upon the movant to show some valid reason
for his or her neglect and delay") (internal quotation marks omitted) (quoting *Sanders v. Thrall
Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984)).

"Good cause," the court reasoned, "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d at 340; *accord Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (court's primary consideration in determining whether a movant has established good cause is "whether the moving party can demonstrate diligence"); *Lowry v. Eastman Kodak Co.*, 14 F. App'x 27, 30 (2d Cir. 2001) (same); *Carnrite v. Granada Hosp. Grp., Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997) ("'[g]ood cause' means that scheduling deadlines cannot be met despite a party's diligence").

    Although Buckingham maintains that he was unaware that leave of the court was required to amend his complaint, this Court's scheduling order expressly indicated that a motion was required and set a date by which such motion must be filed.  (Docket # 11 at ¶ 3). Additionally, when denying Buckingham's previous motion to amend, the Court explained at length that Buckingham would be required to demonstrate good cause if he wished to amend his complaint at this stage of the litigation and gave him another opportunity to do so. (Docket # 95). Plaintiff's one-sentence request for leave to amend his complaint fails to demonstrate the requisite good cause to permit an amendment at this stage of the litigation.  *See Case v. Clivilles*, 2016 WL 5818577, *4 (S.D.N.Y. 2016) ("the [c]ourt is justified in denying leave to amend the complaint after the scheduled deadline even when accounting for [plaintiff's] *pro se* status[;] [plaintiff's] motion for leave to amend is denied for failure to show good cause to amend the complaint seventeen months after the scheduling order deadline"); *Collins v. Experian Credit Reporting Serv.*, 2006 WL 3703414, *1 (D. Conn. 2006) ("[b]ecause this [c]ourt gave [p]laintiffs a final deadline . . . for the filing of any amended complaint, and because the [p]laintiffs have not alleged or demonstrated any good cause for amending the complaint at this time, and further

because the [p]laintiffs have already been given ample opportunity to amend their complaint in the two years that this case has been pending, the [c]ourt [denies] [p]laintiffs' [m]otion to [a]mend").  Accordingly, Buckingham's motion seeking leave to amend his complaint is denied.


III.   **Buckingham's Motion to Compel and for Sanctions**

On May 31, 2016, this Court held oral argument on several motions to compel filed by Buckingham.  (Docket ## 66, 81, 82, 92, 96).  As this Court noted on the record, considering Buckingham's *pro se* status and the lack of clarity in his discovery requests, the Court's law clerk, Christin M. Cornetta, Esq., spent substantial time in conference with Buckingham and counsel for LGT addressing each of Buckingham's discovery requests and attempting to determine the precise information or documents that Buckingham sought.  Ms. Cornetta placed on the record her understanding of the parties' requests and representations.  The Court granted in part and denied in part Buckingham's motions and directed LGT to "search for responsive information and supplement its responses to Interrogatories Nos. 3, 4 and 5 on or before June 30, 2016 consistent with the Court's directions during the proceedings."  (Docket # 92).  The interrogatories, proceedings, and supplemental responses are summarized below.

A.   **Interrogatory No. 3**

Buckingham's Interrogatory No. 3 sought the following:

> Please provide copies of all documents, which include written agreements, meetings, plans, telephone conversations, emails, names, persons, specific involvement, times and dates on Lewis General Tires Inc., Treasurer Controller Manny D'Ambrosio, orders for (unjust job termination) of I, Walter Buckingham.

(Docket # 55).

During the proceedings, Ms. Cornetta reported that Buckingham had indicated that he was searching for written agreements concerning his employment with LGT, specifically a document concerning his return to work on Mondays through Fridays beginning on June 2. Counsel for LGT represented that he believed that document had already been provided, but agreed to search for the document and produce it before June 30, 2016. Based upon these understandings, the Court directed LGT to supplement its response to this request. (Docket # 92).

On June 16, 2016, LGT supplemented its response. (Docket # 98). With respect to this request, LGT noted that it had been asked to "[p]rovide the document stating that Mr. Buckingham needed to take care of his mother and was expected to return to work on June 2, 2012." (*Id.*). To the response, LGT attached a copy of the document it believed was responsive to this request.

**B.  Interrogatory No. 4**

Buckingham's Interrogatory No. 4 sought the following:

> Please identify the names, actual street address and telephone numbers of all-persons, companies, affiliations and parties, who have given conversations, written and recorded statements also, emails to [LGT] and their attorneys, concerning the subject matter of this lawsuit.

(Docket # 55).

During oral argument, Ms. Cornetta reported that LGT had objected to the interrogatory on the grounds that it was unclear what information Buckingham was seeking and because the request appeared to seek materials protected by attorney-client privilege and the work product doctrine. Buckingham indicated that he was primarily attempting to determine the identity of the individual who had instructed Manny D'Ambrosio to terminate Buckingham's

8

employment.  Counsel for LGT represented that he would consult with his client and would

supply that information to Buckingham, to the extent it existed.  Based upon these

understandings, the Court directed LGT to supplement its response to identify any such

individual and upheld LGT's objection to producing material protected by the attorney-client

privilege or covered by the work product doctrine.  (Docket # 92).

In its supplemental response to this request, LGT noted that it had been asked to

"[i]dentify the person or persons who directed and/or suggested that Manny D'Ambrosio

communicate [Buckingham's] termination of employment to him."  (Docket # 98).  LGT, while

conceding that Buckingham had been terminated, responded that it was not able to identify the

individual who had "a specific discussion with Mr. D'Ambrosio concerning this."  (*Id.*).  LGT

also noted that D'Ambrosio was no longer employed by the company.  (*Id.*).  Although LGT's

response complied with the Court's directive, LGT will be required to further supplement its

response by **March 31, 2017**, to identify any individuals, other than attorneys, who authorized or

were consulted about the decision to terminate Buckingham's employment.

C.    **Interrogatory No. 5**

Buckingham's Interrogatory No. 5 sought the following:

Please identify the total number of blacks who applied for jobs
with [LGT] and how many of them were actually awarded
employment, from 2012-present.

(Docket # 55).

During oral argument, Ms. Cornetta reported that counsel for LGT had

represented that LGT did not keep records of the race or national origin of its employees and that

its employment application did not request or record such information.  After some discussion

with the Court, including the Court's caution that LGT would likely be precluded from using

9

such information to defend against Buckingham's claims if it failed to produce it to Buckingham, counsel for LGT agreed to consult with his client to determine whether such information could be obtained and produced.

In its supplemental response, LGT noted that it had been directed to "identify the number of black individuals other than [Buckingham] who have worked at [LGT] since May 2012." LGT responded that Buckingham was the only such individual employed in May 2012 and that since that time LGT believed that it had "employed two other individuals who may fit the description above," one of whom continued to be employed by the company. As directed by the Court, LGT produced a copy of Buckingham's personnel file. (Docket ## 92, 98).

Despite receiving those responses, Buckingham filed four largely repetitive motions seeking to compel further interrogatory responses from LGT and sanctions and accusing LGT of forging documents and making misrepresentations to the Court.[1]  (Docket ## 106, 107, 110, 121). Buckingham maintains that LGT's supplemental responses are inadequate and that LGT created a "forged" discovery request in connection with its supplemental responses.[2]  (*Id.*).

LGT counters that it adequately supplemented its responses in accordance with the Court's instructions during the oral argument. (Docket ## 115 at ¶¶ 12-14, 18; 124 at ¶¶ 17-19). LGT also opposes the motions on the grounds that Buckingham failed to meet and confer in good faith prior to filing them. (Docket # 115 at ¶ 16). Unsurprisingly, LGT also disputes Buckingham's accusations of forgery and deception, maintaining that its supplemental

---

[1]  Certain portions of Buckingham's motions appear to seek sanctions in the form of an order granting judgment in his favor based upon LGT's conduct. (*See* Docket ## 110, 121). For the reasons set forth herein, I find that LGT has not engaged in any sanctionable conduct, let alone conduct that would warrant such an extreme sanction.

[2]  On March 9, 2017, Buckingham filed a reply and an amended reply in further support of his January 23, 2017 motion. (Docket ## 121, 126, 128). These submissions are largely repetitive of Buckingham's other filings. (*Compare* Docket ## 106, 107, 110, 121 *with* Docket ## 126, 128).

responses comply with the directives of the Court to supplement its responses to Buckingham's requests, as narrowed by the Court and the parties during oral argument.  (*Id.* at ¶¶ 11-14, 22-24). LGT requests that the Court require Buckingham to seek leave of the Court and demonstrate good cause prior to filing any future motions.  (Docket # 124 at ¶ 24).

Buckingham's motions are denied in their entirety.  As an initial matter, Buckingham has failed to comply with Rule 37(a)(1) of the Federal Rules of Civil Procedure because his motions do not contain a certification that Buckingham attempted to resolve his discovery issues with LGT prior to filing the motions.  *See* Fed. R. Civ. P. 37(a)(1) ("[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action").  Indeed, during oral argument on May 31, 2016, the Court advised Buckingham at length about his obligation to meet and confer with LGT prior to filing a discovery-related motion.  Buckingham's failure to comply with Rule 37, particularly in light of the Court's advisement, warrants denial of his motions.  *See Brown v. Clayton*, 2013 WL 1409884, *2 (D. Conn. 2013) ("[t]he failure to follow the meet and confer requirement is a sufficient basis for denying the motion to compel").

In any event, LGT has supplemented its responses to Buckingham's discovery requests, as narrowed by the Court during the May 31, 2016 proceedings.  With respect to Interrogatory No. 3, LGT produced a document matching the description provided by Buckingham during the proceedings.  Similarly, with respect to Interrogatory No. 5, LGT identified the number of black employees it has employed since May 2012.  Finally, with respect to Interrogatory No. 4, LGT was unable to provide the requested information, explaining that the information was not within its custody, possession, or control.  *See Ellison v. Allstate Indem. Co.*,

2013 WL 6191576, *2 (W.D.N.Y. 2013) ("the [c]ourt cannot compel production of [information] that do[es] not exist").  Accordingly, I find that LGT's supplemental responses are adequate and comply with this Court's June 1, 2016 Order.

Because LGT has complied with this Court's Order, no basis exists to impose sanctions against LGT.  Buckingham's allegations of forgery and deceit are baseless.  Buckingham is cautioned that unsupported assertions of fraud to the Court will not be tolerated or excused.  Although "the Court has discretion to take account of the special circumstances that arise with pro se litigants, pro se status will not shelter a litigant from sanctions." *Cerami v. Rochester, New York City Sch. Dist.*, 1996 WL 451414, *1 (N.D.N.Y. 1996).

## **CONCLUSION**

LGT's motion to dismiss the complaint or for other sanctions **(Docket # 117)** is **DENIED without prejudice to renewal**.  Buckingham is directed to appear at the offices of LGT's counsel on **April 12, 2017**, at **10:00 a.m.**, to be deposed concerning the subject matter and location of the settlement agreement.  Buckingham is cautioned that his failure to appear and answer relevant questions may result in the imposition of sanctions, including an order dismissing this action.  Buckingham's motion to amend the complaint (**Docket # 103**) is **DENIED**.  Buckingham's motions to compel and for sanctions (**Docket ## 106, 107, 110, 121**) are **DENIED**, although LGT is directed to further supplement its answer to Interrogatory 4 as set

forth herein.  Buckingham is further reminded of his obligation to confer with counsel for

defendant about any discovery disputes prior to filing any motions relating to those disputes.

**IT IS SO ORDERED.**

                                                                          _s/Marian W. Payson_
                                                                        MARIAN W. PAYSON
                                                                    United States Magistrate Judge

Dated: Rochester, New York
       March 14, 2017