UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WALTER BUCKINGHAM,

                    Plaintiff,

        v.

LEWIS GENERAL TIRES, INC.,

                Defendant.

_____

<u>REPORT & RECOMMENDATION</u>

13-CV-6264W

## <u>PRELIMINARY STATEMENT</u>

           Pending before the Court is the fifth motion by defendant Lewis General Tires,
Inc. ("LGT") for discovery sanctions (Docket ## 24, 42, 75, 117, 136), and the fourth to seek
dismissal of plaintiff's Complaint as the appropriate sanction (Docket ## 42, 75, 117, 136).
(Docket # 136).  The motion relates to the failure by *pro* se plaintiff Walter Buckingham
("Buckingham") to respond properly to discovery requests propounded in March 2014 (Docket
# 23) and which LGT has pressed for over three years between the service of those requests and
the filing of the instant motion.  During that thirty-eight-month period, the Court has addressed
with Buckingham the discovery requests at issue on numerous occasions: at oral argument in
open court (Docket ## 37, 122), in response to correspondence sent to the Court (Docket # 51),
and in eight previous orders relating to the dispute (Docket ## 48, 51, 52, 93, 100, 102, 129,
132).  Each time Buckingham was directed to respond appropriately and substantively to the
requests.  Buckingham was counseled on several occasions that his failure to comply with his
discovery obligations could result in sanctions, including dismissal of his Complaint.  (*See*
Docket ## 48 at 5-6; 122 at 40-41; 129 at 12).

Indeed, in its last Order addressing Buckingham's failure to provide the settlement agreement at the center of the discovery dispute (described more fully below), the Court noted that Buckingham had taken inconsistent and shifting positions with respect to whether he possessed the agreement and directed Buckingham to appear for a deposition "to obtain information about the previous litigation and the settlement of that litigation."  (Docket # 129 at 3).  Although the Court denied LGT's motion for an order of dismissal "at [that] stage," the Court explicitly warned Buckingham:

> [F]ailure to appear and answer relevant questions may result in the imposition of sanctions, including an order dismissing this action.

(Docket # 129 at 3, 12).

Although Buckingham appeared at the deposition, he provided no information responsive to counsel's questions or relevant to the stated purpose of the deposition.  This Court's forbearance to recommend the imposition of the extreme sanction of dismissal has come to an end.  The only reasonable conclusion to draw from Buckingham's conduct at the deposition, viewed in the context of the protracted more than three-year effort by LGT to obtain the requested discovery, is that Buckingham has no intention of providing responsive information or documents in his possession or within his ability to produce that the Court ordered him years ago to produce.  His pattern of obstructive and bad faith conduct warrants the ultimate sanction of dismissal that the Court has heretofore been loath to recommend.

## **PROCEDURAL BACKGROUND**

Buckingham filed suit against LGT, his former employer, in May 2013 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging that he was discriminated against in the course of his employment and terminated on the basis of race.

2

(Docket # 1).  Not long after the Rule 16 conference, discovery disputes arose, leading to two sanctions motions concerning Buckingham's obligations to make mandatory disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.  (Docket ## 24, 42).  At oral argument on the first motion, the Court also addressed the fact that Buckingham had not responded to LGT's First Set of Interrogatories and Request for Production of Documents, served on March 7, 2014.  (Docket # 37).  Those requests were not the subject of LGT's formal motion because Buckingham's responses had not become overdue until after LGT had filed its discovery motion (which related to mandatory disclosures).  The Court nonetheless addressed the requests with Buckingham in open court at the April 15, 2014 oral argument, inquired how much time he needed to do so, and, at his request, set a new deadline for him to respond.  (Docket ## 37; 48 at 2).

   LGT's discovery requests consisted of five interrogatories and four document requests.  (Docket # 23).  One of the interrogatories and one of the document requests are relevant to the pending motion:

Interrogatory 4

  4. Identify and describe in detail all previous claims of discrimination prior to the instant lawsuit, including but not limited to, your previous employment with [LGT].  Provide all information, including:

    a. the date of all claims of discrimination;

    b. to whom (agency or department) your complaint(s) were made;

    c. whether an investigation was conducted;

    d. whether or not a lawsuit was commenced;

    e. the result/disposition/ultimate outcome of your previous claims.

3

<u>Document Request 3</u>

> 3.  All documents pertaining to your previous claims of
>     employment discrimination, including but not limited to, the
>     pertinent documents concerning your allegations against your
>     previous employer [LGT] and any other employer or entity
>     about which you have complained and/or sued.

(*Id.* at 4, 5).

Following the Court's direction to Buckingham to answer the discovery requests, Buckingham filed a response asserting boilerplate objections that Interrogatory 4 and Document Request 3 are "irrelevant, burdensome and harassive and not admissible nor . . . likely to lead to the discovery of admissible evidence." (Docket # 40 at 1, 2). After unsuccessfully attempting to confer with Buckingham to obtain the requested information (*see* Docket # 42-3), counsel for LGT filed a motion to dismiss on the grounds that Buckingham had refused to participate in the discovery process or to communicate with counsel regarding the discovery sought by LGT, including Interrogatory 4 and Document Request 3. (Docket # 42 at ¶¶ 24-36). LGT noted that Buckingham's noncompliance with his discovery obligations had necessitated rescheduling Buckingham's deposition three times. (*Id.* at ¶ 41). In response to LGT's motion, Buckingham simply requested that the Court deny the sanctions motion without addressing any of the alleged deficiencies. (Docket # 44). The Court denied LGT's motion for dismissal, finding "insufficient evidence" at that time "to conclude that plaintiff [had] acted in bad faith." (Docket # 48 at 4). The Court further determined that Buckingham's objections lacked merit and that the requests were relevant; Buckingham was ordered to respond to LGT's interrogatories and document requests (except Document Request 4, not relevant herein) by no later than March 20, 2015. (*Id.* at 4). The Court warned Buckingham that "his failure to answer the interrogatories and produce the responsive documents may result in the imposition of sanctions." (*Id.* at 5). In closing, the

Court cautioned, "should the Court determine that either party has violated the duty to confer or to communicate with one another in good faith in order to litigate this action in accordance with applicable rules, appropriate sanctions may be imposed." (*Id.* at 5-6).

Despite the Court's Order, Buckingham responded to Interrogatory 4 with another objection. (Docket # 49 at 5). Instead of providing information in response to the five-subpart question about previous claims of discrimination made by Buckingham, he asserted simply:

> Objection

> Due to a settlement agreement all information is confidential[.]
> Can't be giving out at all in detail[.]

(*Id.*). Nor did he provide any documents relating to any previous claims of discrimination. (*See id.*).

Counsel for LGT again attempted unsuccessfully to confer with Buckingham to obtain substantive responses to the requests. Specifically, counsel sent two letters to Buckingham in March 2015 identifying the deficiencies in Buckingham's responses and affording Buckingham time to cure the deficiencies. (Docket ## 75-2, 75-4). On or about April 7, 2015, Buckingham wrote to the Court without copying LGT's counsel to request *in camera* review of the settlement agreement. (Docket # 51). Buckingham stated that Interrogatory 4 "can't be answered in full detail and can't [be] provided to the defendant . . . due to a settlement agreement." (*Id.*). Buckingham incorrectly asserted that the Court had determined that Interrogatory 4 was "overly-broad" and that Buckingham was not required to produce documents responsive to Interrogatory 4. (*Id.*). As reflected above, the Court held that Interrogatory 4 and the related document request, Document Request 3, were relevant and ordered Buckingham to answer them. (*See* Docket # 48). Contrary to Buckingham's contention, the Court's finding of

overbreadth was directed at Document Request 4, which is unrelated to the issue of past claims of discrimination.  (*Id.*).

On April 16, 2015, in response to Buckingham's letter request, the Court agreed to *in camera* review of the settlement agreement and directed Buckingham to submit the agreement to the Court by no later than April 27, 2015.  (Docket # 51).  On April 20, 2015, by letter, Buckingham requested an extension of the deadline to produce the settlement agreement "due to not having the agreement in [his] possession" and "need[ing] more time to obtain such information."  (Docket # 157).  On April 22, 2015, Buckingham sent a letter request to the Court asking for the Court to rescind its Order providing for *in camera* review.  (Docket # 52).  Based upon Buckingham's representation in the letter that "interrogatory # 4 (a-e) has already been answered," the Court granted Buckingham's request.  (*Id.*).

On October 20, 2015, counsel for LGT wrote to Buckingham once again in an effort to secure responses to the outstanding discovery requests.  (Docket # 75-6).  Counsel stated that the letter would be LGT's "final good faith effort to obtain this information" and invited Buckingham "to contact [counsel] with any questions or concerns."  (*Id.* at 2).  Before seeking court intervention again, counsel attempted to reach Buckingham by telephone.  (Docket # 75-1 at ¶ 34).  Counsel's voice mail message, which Buckingham conceded he received, was not returned.  (Docket ## 75-1 at ¶ 35; 77 at 5).  Instead, Buckingham wrote counsel on February 22, 2016, indicating that he did not notice until that day that counsel had called eleven days earlier.  (Docket # 77 at 5).  Buckingham stated, "[D]ue to my health condition of being stressed, not being able to sleep at night and other factors, I have not been checking my messages frequently."  (*Id.*).  The letter did not address the status of his discovery responses, but rather

sought a settlement.  (*Id.* ("So, I'm asking you Mr. Affronti[,] are you and [LGT] ready to resolve this case by coming to a settlement.  Please respond by mail.")).

On February 24, 2016, LGT filed its second motion for dismissal.  (Docket # 75). The basis for the motion was Buckingham's continued refusal to respond to LGT's discovery requests and to comply with this Court's Order requiring him to do so.  (*Id.* at ¶¶ 36-38; *see also* Docket # 76).  Buckingham opposed the motion to dismiss on the grounds that he had provided counsel nine documents responsive to LGT's requests (which did not include the settlement agreement or any documents relating to past claims of discrimination), LGT's "unjust requests were stressful to [him]," his claims had merit, and LGT should agree to terms of a settlement. (Docket # 77).  The filing did not address LGT's interrogatories.  Later that month, on March 25, 2016, Buckingham also filed a motion for an order of non-dismissal and for an order compelling further responses to his document requests.[1]  (Docket # 81).  He again stated that he had produced documents, alleging that he "ha[d] turned over everything [he] had in [his] possession at [the] time."  (*Id.* at ¶ 30).

This Court conducted oral argument on the discovery motions on May 31, 2016. (Docket # 122).  With respect to Interrogatory 4, the Court asked Buckingham why he had not produced the settlement agreement as the Court had ordered.  The following exchange took place:

> **MAGISTRATE JUDGE PAYSON:**  All right, Interrogatory No. 4, previous claims of discrimination.  I'm confused about this because there was at one time some correspondence to the Court in which Mr. Buckingham said that he was subject to a confidentiality order, a settlement agreement that was confidential.

---

[1]  Several days later Buckingham filed a second motion to compel, seeking further responses to the same requests addressed in his March 25, 2016 motion.  (*See* Docket # 82).

I said I would look at that *in camera*. And then Mr. Buckingham, you wrote me and you said never mind, I'm not asking for you to look at it *in camera* because I'm disclosing it.

So are you saying, Mr. Affronti, that you never got that?

**MR. AFFRONTI:** I've never gotten anything in response to this interrogatory.

**MAGISTRATE JUDGE PAYSON:** And what happened, Mr. Buckingham? I understood you said you were going to be turning that over. Why didn't you turn it over?

**MR. BUCKINGHAM:** Sent him a letter saying that it's a settlement agreement and the agreement – I couldn't turn it over because it was an agreement –

**MAGISTRATE JUDGE PAYSON:** I'm ordering you to turn it over. So now you're under court order to turn it over. And to do so by June 30th.

**MR. BUCKINGHAM:** Well, I'll have to find the attorney that represented me then because – and it state on there it's an agreement –

**MAGISTRATE JUDGE PAYSON:** Okay, I'm just confused because you sent me a letter and you said never mind, you don't need to review it I –

**MR. BUCKINGHAM:** Because you said anything overbroad. To me that was overbroad. I didn't think you was gonna have me turn it over.

**MAGISTRATE JUDGE PAYSON:** "The reason for such request is due to Interrogatory No. 4 has already been answered." [Quoting Buckingham's statement in Docket # 52].

And Mr. Affronti is saying you didn't answer it. So what was the basis of your telling me it had been answered if you hadn't answered it?

**MR. BUCKINGHAM:** I answered it by – I told him – I was telling him that it was a settlement agreement. I done answered that. I said due to a settlement agreement, all the information is confidential.

And then your letter stated that not to answer anything overbroad, which that make it overbroad, would put me in a lawsuit being sued.

**MAGISTRATE JUDGE PAYSON:** Okay, what I'm going to do is when I'm done today I'm going to draft a one paragraph written order that directs you to turn that over to Mr. Affronti.

I'm doing that for your benefit so that if anybody ever raises a question, you will have a written document that says – and I'll say that you objected to turning this over as confidential, but I am ordering you to do that.

So you will have a court order if anybody raises anything that you can show and say the judge –

**MR. BUCKINGHAM:** Where that leaves me in trying to find employment in Rochester?

**MAGISTRATE JUDGE PAYSON:** I don't know where it leaves you, but that's my direction and I'm going to reflect that in an order. I gave you the opportunity to do things *in camera*; I was prepared to do that. You told me no, and I understood that you were going to answer it and provide it and you didn't and at this stage I'm going to direct – okay, I'm done talking about this.

(*Id.* at 34-37).

Following oral argument, the Court ordered Buckingham to produce the settlement agreement by no later than June 30, 2016. (Docket ## 92, 93). Consistent with the Court's other directions at oral argument, the Court also ordered Buckingham to provide further responses to other interrogatories and document requests, and ordered LGT to supplement its responses to several of Buckingham's discovery requests, finding that the majority of them were adequate.[2] (Docket # 92). The Court's Order explicitly provided that the settlement agreement "shall be used solely in connection with this lawsuit." (Docket # 93).

---

[2] As to Buckingham's discovery motions, in light of LGT's position that Buckingham had not conferred before filing his discovery motions, the Court's Law Clerk conducted a conferral conference with Buckingham and counsel for LGT prior to oral argument; the Law Clerk then summarized results of the conferral on the record. (Docket # 122 at 1-29).

Ten days later Buckingham moved for reconsideration of the Court's Order requiring him to produce the settlement agreement. (Docket # 97). Buckingham again argued that LGT was "not entitled to the possession of [the agreement]" because it was "confidential" and its breach "will cause damages." (*Id.* at 1). His motion also included the following statement:

> May 31, 2016 Motion Hearing Judge Payson [a]sk[ed] me in court if I have settlement agreement[.] I answered yes not knowing if I really have one in my possession due to being sick and not able to concentrate.

(*Id.* at 3). His motion nonetheless did not assert that he did *not* possess the agreement or have the ability to produce it even if it was not in his physical possession. (*Id.*).

Two days before the deadline, Buckingham filed a written supplemental discovery response. (Docket # 99). With respect to the settlement agreement, he attached a copy of a letter dated the same day to LGT's counsel, stating:

> This letter is to inform you that I'm not in possession of a settlement agreement.
>
> On May 31, 2016 Judge Payson did ask me if I have a settlement agreement, in which I answered yes, but not knowing if I really had one in my possession; due to me being sick in court of not being able to focus, concentrate and understand. Again, I'm not in possession of a settlement agreement *and there is no record that I sued any company.*

(*Id.* at 10 (emphasis added)). Again, the motion did not assert that Buckingham lacked the capacity to obtain the document and produce it.

Several days later, on July 1, 2016, the Court issued an Order providing that it was "willing to reconsider its order [directing production of the agreement to LGT] provided that Buckingham submit[ted] a copy of the settlement agreement to this Court on or before July 15, 2016, for *in camera* review." (Docket # 100). In the event that Buckingham did not, the Order

10

directed him to produce the agreement to LGT by July 22, 2016.  (*Id.*).  One day before the

*in camera* submission deadline, Buckingham moved for reconsideration of my July 1 Order.

(Docket # 101).  In this filing, he argued:

> I find that in order to submit a copy of a settlement agreement to
> this Court for an in camera review, it would have to be in my
> hands or in my possession to turn over.  However, when you state
> that you have something, but you haven't seen it, there's no
> settlement agreement in my possession.

(*Id.* at 2).  The Court denied Buckingham's motion in an Order that provided:

> Of course, while the Court cannot compel production of
> documents that do not exist, Rule 34(a) requires production of not
> only documents that are within a party's possession, but also those
> within a party's control.  Buckingham's previous representations
> regarding the agreement suggest that it exists, and to the extent that
> the settlement agreement is possessed by Buckingham's former
> counsel, or another party or agent within Buckingham's control,
> the discovery rules would require Buckingham to contact those
> parties to obtain a copy of the agreement.  Buckingham has not
> provided any information to the Court that would permit the
> conclusion that the agreement is not within his control to obtain
> and produce.  Accordingly, having reviewed Buckingham's motion
> for reconsideration, it is hereby
>
> ORDERED, that Buckingham's motion for reconsideration
> (**Docket # 101**) is **DENIED**.  Buckingham is directed to submit a
> copy of the settlement agreement to this Court on or before **August
> 2, 2016,** for *in camera* review.  If Buckingham does not provide a
> copy of the settlement agreement to the Court on or before that
> date, Buckingham is directed to produce a copy of the settlement
> agreement to the defendant on or before **August 9, 2016**.  The
> settlement agreement shall be used solely in connection with this
> lawsuit.

(Docket # 102).

On August 2, 2016, Buckingham filed a written response to the Order.  (Docket

# 108).  For the first time in the over two years that LGT had been seeking production,

Buckingham claimed that (1) the document had not been in his possession for a decade or longer,

(2) the party who had possession of it was now deceased, and (3) the "whereabouts of such is unknown." (*Id.*). For those reasons, he asserted that he did not have "control to obtain or produce" the agreement. (*Id.*).

Buckingham's response prompted LGT's third motion seeking discovery sanctions in the form of dismissal. (Docket # 117). The motion was premised primarily upon Buckingham's alleged "steadfast[] refus[al] to provide [LGT] with any discovery as to his previous claims of discrimination," despite six court orders requiring him to do so. (*Id.* at ¶ 59). Noting that Buckingham had been warned about his conduct, LGT urged dismissal as the appropriate sanction for his "steadfast and willful" noncompliance with discovery obligations and disobedience of court orders. (*Id.* at ¶¶ 58, 60). Buckingham filed an opposition to the motion that entirely ignored his asserted failure to provide any information about past claims of discrimination. (Docket # 119). Instead, the opposition argued the merits of his claim and accused LGT and its counsel of forging discovery materials. (*Id.* at 2-4).

Although the Court acknowledged that Buckingham's failure to produce the agreement was the subject of several previous motions, the Court again declined to recommend the extreme sanction of dismissal "at [that] stage," noting that Buckingham recently had disclaimed possession of, or the ability to produce, the agreement. (Docket # 129 at 3). The Court found that those assertions, which were inconsistent with his previous representations, did not even identify the party who last possessed it and were "insufficient to prove [Buckingham's] inability to produce it." (*Id.*). Under these circumstances, the Court determined, "the most efficient manner in which to obtain information about the previous litigation and the settlement of that litigation is to permit counsel for LGT to depose Buckingham on those subjects."[3] (*Id.*).

---

[3] In its decision, the Court also explained that the agreement was subject to disclosure even if its terms provided for confidentiality. (*Id.* at 3-4). The Court made clear, that "Buckingham may not resist providing

The Court thus ordered Buckingham to appear for deposition on April 12, 2017, "concerning the subject matter and location of the settlement agreement." (*Id.* at 12). Buckingham was warned that "his failure to appear and answer relevant questions [could] result in the imposition of sanctions, including an order dismissing this action." (*Id.*).

One week later Buckingham filed a document entitled, "Requesting Fairness in the Interest of Justice." (Docket # 131). Although the specific relief that Buckingham sought was difficult to discern, the Court acknowledged that it could be construed as a request for reconsideration of its Order directing Buckingham to appear for deposition. (Docket # 132). So construed, the Court denied it. (*Id.*).

Buckingham appeared for his court-ordered deposition on April 12, 2017. (Docket # 136-2). Although the Court had ordered him to appear at counsel's office in Buffalo, he sought court intervention to change the location; through the Court's assistance, arrangements were made for him to appear at the Rochester federal courthouse and be deposed by video. (*See* Docket ## 133, 134, 135).

The transcript of the deposition demonstrates that Buckingham frustrated counsel's repeated and proper efforts to explore the issues as to which Buckingham was ordered to provide information. Buckingham repeatedly interrupted counsel to complain that he was unable to answer questions due to harassment by counsel and LGT, claimed not to understand clear and basic questions, and simply provided no relevant information at all. (*Id.* at 9-27). He merely repeated that he did not have possession of the agreement, that some unidentified person involved with the agreement was deceased, and maintained that he could not remember anything at all about it since it related to a time period over a decade ago. (*Id.*). Several times, he claimed

testimony about or disclosing a copy of the agreement on the grounds that doing so would violate a confidentiality provision." (*Id.* at 4).

not to remember anything at all from any time before he began work at LGT in 2010. (*Id.* at 9, 18, 24, 25, 26). Buckingham persistently and implausibly claimed that he could not remember any place he worked before LGT (where he was hired in 2010). (*Id.* at 24-26). Indeed, he asserted that he could not even recall whether he made any prior claims of discrimination, challenging counsel, "Could you tell me who you been with in 2004 at 2:00 a.m.? Can you tell me – give [me] the name of the person that you was with?" (*Id.* at 9). With remarkable patience, counsel endeavored to explore the issues about which Buckingham was ordered to testify. For example, counsel returned to the general subject of prior claims of discrimination, asking Buckingham, "You don't remember whether or not you've made prior claims of discrimination against anyone, before [LGT]?" (*Id.*). Buckingham responded:

> No. I can't. I can't recall. I can't even answer that question. I don't have an attorney and this is about a settlement agreement.

(*Id.*). Counsel later returned to the inquiry; this time the following exchange occurred:

> Q.    Before working at [LGT,] did you make any claims of discrimination against any other folks that you worked for?
>
> A.    All I can think about what was done to me at [LGT.] That's the trauma I'm going through.
>
>       The only thing I can remember is the things that what happened to me at [LGT,] how I was fired up.
>
>       How they had attorney to send the managers and the supervisor over to Buffalo to terminate my employment, that's why I asked you what's the Roach Brown and McCarthy had any – anything to do with.
>
> Q.    Walter, have you ever claimed –
>
> A.    It's –
>
> Q.    – that somebody – stop. Let me get my question out, please.

Have you ever claimed that somebody other than [LGT] has ever discriminated against you?

A.    All I can think about being discriminated against, the trauma I'm going through with [LGT.]

Q.    Is that a no?  Are you claiming that you have never – are you telling us that you have never made claims of discrimination against anyone other than [LGT?]

A.    I'm telling you I'm going through trauma.  The only thing going through my mind is what you did going in here on May the 31st, how you distracted the clerk (inaudible) and she gave wrong information to the judge.

That's all I can think about right now, when I see you.

Q.    Walter, are you not able to answer questions today?

A.    I can.  You asked me if I had settlement agreement.  I told you I'm not in possession of the settlement agreement and you received that.

Q.    Walter, my question is are you able to answer questions today, yes or no?

A.    This is already answered.  That's why –

Q.    Listen to me, are you able to answer questions today?

A.    Yeah.  I'm able to answer questions.

Q.    Okay.  So stop – stop talking.  Listen to the questions, all right?

I'm going to ask you a question and you listen to the question and then only answer that question.

I don't want to hear about things you want to get off your chest or about something you think happened six months ago in discovery.

I need an answer to questions.  The court has ordered you to come in today to answer questions pertaining to your prior litigation and the settlement agreement that resulted from that.

15

> All I'm asking is, who is the name of the party that you claimed discrimination against, that a settlement agreement was ultimately generated out of.
>
> Who was party to that settlement agreement?
>
> A.    Who was party to a settlement agreement?  I can't even think that – that far.  I know there was a settlement agreement and –
>
> Q.    You don't even know who it was against?
>
> A.    It's been over – that's been over a decade ago.
>
> Q.    That wasn't my question.
>
> A.    I don't have a settlement agreement.
>
> Q.    Who was the – who was the company that you made claims against for discrimination prior to [LGT?]
>
> A.    I can't recall.

(*Id.* at 15-18).

Counsel cautioned Buckingham that if he did not respond substantively to his questions that he would be forced to terminate the deposition and seek sanctions.  (*Id.* at 10, 13, 21).  After approximately thirty minutes of futile efforts, which were met with nothing but claims of complete failure of recollection that defy credulity, counsel ended the deposition.  (*Id.* at 26-27).  This fourth motion for dismissal sanctions followed.

Despite the issuance of a scheduling order on LGT's dismissal motion, Buckingham filed no opposition by the court-ordered deadline.  Instead, he filed a belated submission that again reasserted the merits of his claim against LGT and ignored entirely the arguments made by LGT in its motion.  (Docket # 144).  He neither offered any defense nor explanation of his deposition conduct.  (*Id.*).  Not even one sentence of his submission addressed the deposition.  (*Id.*).

## DISCUSSION

Rule 37(b) of the Federal Rules of Civil Procedure provides, in relevant part, that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may issue further just orders[,] . . . [including orders] . . . dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). Similarly, a court may dismiss an action if a party fails to respond to properly served discovery demands. *See* Fed. R. Civ. P. 37(d).

"All litigants, including *pro ses*, have an obligation to comply with court orders," and although *pro se* litigants are generally entitled to "special solicitude," they "are not immune to dismissal as a sanction for noncompliance with discovery orders." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (internal quotations and brackets omitted). Rather, "[t]he severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994). Nevertheless, "dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds 'willfulness, bad faith, or any fault' by the non-compliant litigant." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d at 302 (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990), *cert. denied*, 499 U.S. 943 (1991)); *see S.E.C. v. Setteducate*, 419 F. App'x 23, 24 (2d Cir. 2011) (summary order) ("[w]hile we have expressed a preference that litigation disputes be resolved on the merits, and not by default, . . . we have also consistently recognized that Rule 37 sanctions are applicable in extreme circumstances, where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault") (internal citations and quotations omitted).

In evaluating the appropriateness of sanctions, including dismissal, a court should consider several factors including:

1. the willfulness of the non-compliant party or the reasons for noncompliance;

2. the efficacy of lesser sanctions;

3. the duration of the period of noncompliance[;] and

4. whether the non-compliant party had been warned of the consequences of … noncompliance.

*See Agiwal*, 555 F.3d at 302-03 (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)); *Antonmarchi v. Consol. Edison Co. of N.Y., Inc.*, 514 F. App'x 33, 35 (2d Cir. 2013) (summary order) (identifying same factors as appropriate considerations), *cert. denied*, 571 U.S. 1098 (2013).

Generally, "[a] persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith, or fault, by the noncompliant party." *Peña v. Chocolate*, 2012 WL 3957474, *3 (S.D.N.Y. 2012) (internal quotations omitted). Indeed, "dismissal pursuant to Rule 37 is appropriate 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a sanction.'" *Agiwal*, 555 F.3d at 303 (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

Based upon the entirety of the record in this case, evaluated in accordance with the legal principles discussed above – including, importantly, the four considerations articulated by the Second Circuit, I find that LGT is entitled to an order of dismissal as the appropriate sanction for Buckingham's protracted bad-faith conduct designed to obstruct LGT's efforts to obtain relevant discovery. *See Ghonda v. Time Warner Cable, Inc.*, 2017 WL 395111, *4

(E.D.N.Y. 2017) ("[w]here, as here, a plaintiff has lodged similar complaints of discrimination with a previous employer, courts have held that information concerning those complaints is relevant to her pending claims of employment discrimination") (citing *Muktadir v. Bevacco Inc.*, 631 F. App'x 1, 3 (2d Cir. 2015)).  All four factors weigh in favor of dismissal.  The record on this issue, which has developed over more than three years, demonstrates that Buckingham's refusal to provide any information about prior claims of discrimination has been willful and amounts to purposeful evasion of relevant discovery requests and deliberate disobedience of multiple court orders requiring compliance.

Buckingham's explanations for his noncompliance have shifted so many times over more than three years that the Court cannot determine which explanations, if any, are grounded in any truth.  Initially, Buckingham resisted discovery on the basis that the requests were improper.  When the Court disagreed, he indicated that a settlement agreement with a former employer was responsive, but resisted its disclosure on the plainly baseless grounds that the Court had found the requests at issue overbroad.  Buckingham thereafter sought court intervention to review the document *in camera* based on his assertion that the agreement was confidential.  Despite the Court's agreement to do so, he later asked for an extension in order to obtain the document because it was not in his possession and, shortly thereafter, withdrew the request for *in camera* review on the basis that he had answered Interrogatory 4 in full.  When the Court learned through subsequent motion practice that Buckingham had not in fact produced the agreement, Buckingham represented that he possessed the agreement, and the Court again ordered him to produce it.  Despite that representation, ten days later Buckingham sought reconsideration of the Order, alleging that he told the Court that he possessed the agreement even though he did not in fact know if he possessed it or not.  He subsequently advised LGT's counsel

19

that he did not possess the agreement. For the first time during the prolonged period that LGT had been seeking information about prior claims of discrimination, Buckingham asserted, "there is no record that I sued any company" – an assertion squarely at odds with his representations for the preceding two years that a responsive settlement agreement existed. The Court again required Buckingham to produce the agreement, finding that he had not established his inability to obtain and produce it. His noncompliance and disregard of court orders persisted, leading the Court to order him to appear for his deposition on the issues of the subject and location of the settlement agreement. As explained more fully above, the Court's decision clearly put Buckingham on notice of the issues about which he was ordered to testify.

Notwithstanding that clear notice, Buckingham appeared at the deposition and offered no information relating to the court-identified issues. He persistently defied every reasonable effort to explore the settlement agreement by asserting incredibly – and inconsistently with prior representations – that he had no memory of any salient facts, including whether he had ever made a prior claim of discrimination (notwithstanding his representations that a settlement agreement existed) or even where he had worked prior to employment with LGT. His demeanor of interrupting counsel, accusing him of harassment, and challenging him (for example, whether counsel could remember whom he was with at 2:00 a.m. on some date in 2004) underscores the Court's finding that Buckingham purposely obstructed the deposition to frustrate its court-ordered purposes. The only reasonable conclusion to draw from Buckingham's conduct during the more than thirty-eight months that LGT has pursued this discovery is that Buckingham has resisted those efforts willfully and in bad faith with no intention of ever providing any information about any prior claims of employment discrimination, notwithstanding credible proof that he has made at least one such claim.

20

As to the other factors, the record establishes that Buckingham's noncompliance with his discovery obligations and repeated court orders (eventually numbering eight) spanned a period of over three years since the requests were originally served and addressed by the Court with Buckingham. He was warned several times about the consequences of his noncompliance. Indeed, in the Court's last Order requiring him to appear for deposition, the Court admonished Buckingham that his failure to "answer relevant questions may result in the imposition of sanctions, including an order dismissing this action." (*See* Docket # 129 at 12). Finally, although the Court is mindful of the severity of the sanction and the solicitude generally afforded *pro se* litigants, this Court finds that any lesser sanction would be meaningless to induce or compel his compliance. *See Antonmarchi v. Consol. Edison Co. of N.Y., Inc.*, 514 F. App'x at 35 ("the efficacy of lesser sanctions to correct [plaintiff's] noncompliance is doubtful, given that the court gave him two opportunities to comply with its orders, neither of which he took").

Buckingham's intent to resist discovery on these issues has been demonstrated clearly and convincingly. Any lesser sanction is not warranted on this record. This is not a case in which evidence used to exist and has been spoliated. Rather, this is a case in which the plaintiff possesses relevant information: specifically, he knows that he has filed a prior claim of discrimination that resulted in a written settlement agreement. He simply refuses to provide any information about it and now asserts –in the face of contrary representations and all reasonable inferences – that he has no memory of it. An adverse inference sanction under these circumstances would permit a party to defy court orders and, through bad faith and obstruction, conceal relevant discovery that exists simply because he prefers to litigate the case within the discovery parameters of his own choosing, rather than those set by the Court.

In sum, for all the reasons discussed above, this Court recommends that the district court grant LGT's motion for an order dismissing Buckingham's complaint. *See*, *e.g.*, *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013) (district court properly granted default judgment against *pro se* defendant due to his "history of ignoring district court directives, unilateral failure to cooperate at depositions, and failure to provide the requested discovery"); *Antonmarchi*, 514 F. App'x at 35-36 (district court properly dismissed complaint pursuant to Rule 37 where *pro se* plaintiff engaged in protracted refusal to produce relevant documents in violation of court orders); *Allstate Ins. Co. v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 2017 WL 9938445, *5-6 (E.D.N.Y. 2017) (striking answer where defendants repeatedly failed to provide complete discovery responses despite court orders and warnings; "[t]he pattern of non-compliance and myriad inconsistencies in the defendants' statements regarding their noncompliance call into question their credibility and support a finding of willful non-compliance and bad faith on the part of the defendants"); *Integrity Elecs., Inc. v. Garden State Distribs., Inc.*, 2012 WL 1041831, *5 (E.D.N.Y.) (striking answer for obstructive behavior during discovery, including ignoring deadlines and providing inadequate responses despite warnings by the court; "defendants' behavior throughout this case is consistent with a deliberate strategy to delay and frustrate these proceedings"), *report and recommendation adopted by*, 2012 WL 1041349 (E.D.N.Y. 2012); *3801 Beach Channel, Inc. v. Shvartzman*, 2007 WL 2891119, *5, 7 (E.D.N.Y. 2007) ("[w]hen considering the most severe sanctions under Rule 37, a court may also take into account whether the responding party has been mostly cooperative in discovery, or instead has shown a pattern of dilatory and abusive behavior[;] . . . defendants have simply refused to honor their clearly articulated discovery obligations even with the certain knowledge that by doing so they would prompt me to urge the

court to end their ability to defend the case on the merits"); *Floyd v. Mount Sinai Med. Ctr. Personnel Dir. (Linen Dep't)*, 2006 WL 3230276, *4 (S.D.N.Y. 2006) (dismissing *pro se* plaintiff's complaint where plaintiff refused repeated orders to produce certain documents and failed to participate in his deposition; "[a] case simply cannot proceed where, as here, a plaintiff willfully and repeatedly disobeys court orders to provide a defendant with full discovery on issues central to his claim"); *Davidson v. Dean*, 204 F.R.D. 251, 253, 258 (S.D.N.Y. 2001) (dismissing complaint where plaintiff failed to execute release for medical records or participate in deposition; "[s]ince every relevant factor indicates that the sanction of dismissal is appropriate and plaintiff has offered no colorable excuse for his recalcitrant conduct, plaintiff's claims should be dismissed with prejudice").

## **CONCLUSION**

For the foregoing reasons, it is recommended that the district court grant LGT's motion for an order dismissing Buckingham's complaint. (Docket # 136).

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
     March 4, 2019

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(e) and Local Rule 72.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

                                                    *s/Marian W. Payson*
                                        MARIAN W. PAYSON
                                        United States Magistrate Judge

Dated: Rochester, New York
         March 4, 2019